Filed 7/23/13  P. v. Dewey CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD J. DEWEY,<br><br>    Defendant and Appellant. | 2d Crim. No. B240744<br>(Super. Ct. No. BA343051)<br>(Los Angeles County) |


Edward J. Dewey appeals a judgment following his conviction for possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1))[1] (count 3).  Dewey was also charged with murder (§ 187, subd. (a), 189) (count 1) and attempted murder (§§ 664, 187, subd. (a)) (count 2).  The information alleged he committed those two offenses for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(C).)  The jury deadlocked on counts 1 and 2, and the trial court declared a mistrial as to those counts. The court denied Dewey's requests to exclude photographs taken from his cell phone that showed, among other things, Dewey posing with a handgun a few days prior to the date of the charged offenses.  We conclude, among other things, that those photographs were properly admitted 1) as proof of the charged offenses, 2) to impeach defense witnesses, and 3) as gang evidence.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.  References to section 12021 are to the version in effect prior to January 1, 2012.

FACTS

Dewey was a member of the Southside Montebello gang. Jose Luis Casillas was formerly an active member of the Eastside Paramount gang.

On July 4, 2008, Santos Ramirez and Casillas went to a park to "view some fireworks." When they arrived, a man began staring at Ramirez. He appeared to be aggressive. Ramirez responded by stating, "What's up?" A second man approached. He "[g]ot in [Ramirez's] face" and said, "Don't be disrespecting my homie. This is my fucking vario." Ramirez replied, "I ain't from around here. I kick it on the east side." Someone hit Ramirez in the face. He fell to the ground and people began to kick him. Ramirez saw a handgun pointing at his head. It was not a revolver. He "took off running." Shots rang out. Casillas was shot in the head and he died. The man holding the gun was bald-headed and was wearing a white shirt.

Four days later the police arrested Dewey. Dewey was charged with the murder of Casillas and the attempted murder of Ramirez by firing a "handgun." He was also charged with possession of a handgun by a felon on July 4th. He stipulated that he had a 2005 prior felony conviction.

At trial, Carlos Vargas testified that on July 4, 2008, he saw several individuals fighting. Vargas knew Dewey. He saw Dewey pull out a silver and black handgun "from his waist." Vargas heard three gunshots. The prosecutor showed Vargas a photograph of a handgun that was found on Dewey's cell phone (People's exhibit 22). That photograph was taken on June 30, 2008. Vargas said the gun shown in exhibit 22 was "similar to the handgun" he saw Dewey holding on July 4th. He said Dewey was wearing a white shirt.

Edward Garcia testified that on July 4, 2008, he and his friends were watching fireworks when "[he] heard someone say 'gun.'" He saw a man wearing a white shirt holding a gun.

At the crime scene, police found nine-millimeter shell casings. They did not find the weapon.

2

On July 8, 2008, the police located Dewey who had been living in a motel room. They arrested him and searched his room. In the search, police found "[d]ifferent types" of bullets, including nine-millimeter ammunition. They also found a wallet, Dewey's driver's license, credit cards and a cell phone. Photographs retrieved from the cell phone showed Dewey posing with a handgun. The prosecution used some of the cell phone photographs in its case in chief, contending the gun shown in those photographs was similar to the gun witnesses saw Dewey holding on July 4th.

In the defense case, Fernando Valle, a police officer, testified that after the shooting, Vargas told him the man with the gun was named "Paul." Police detective David Kim testified that Vargas told him the gun he saw was black. Kim said that although Vargas referred to the man with the gun as Paul, he identified Dewey in "a photo lineup."

Donna Hoffman, Dewey's great aunt, testified that Dewey was a "caring" and "compassionate" person. She said he did not have a "character for aggressiveness or acts of violence." "He's never been violent." She said he was always "smiling" and "happy." The prosecutor showed Hoffman a cell phone photograph. It depicted Dewey posing, making a gang sign with his fingers and holding a sign, which included the phrase "Montebello 13 'Demon'" (People's exhibit 84). The defense raised a section 352 objection claiming it showed Dewey "in gang posture" and "gang circumstances." The trial court overruled the objection. Hoffman viewed the photograph and said Dewey did not appear that way when she was with him. The photograph did not change her opinion of him.

Rami Shuraki, a business manager, testified that Dewey "was definitely nonviolent." On cross-examination, the prosecutor showed him a cell phone photograph of Dewey and another man each holding a gun to each others' heads (People's exhibit 64). Shuraki said, "The time that I knew him, . . . he was nonviolent. . . . I don't know what he did at 2:00 in the morning. I wasn't with him."

*Objection to Photographs of Dewey with a Handgun*

At trial, Dewey's counsel objected to the admission of photographs of Dewey with a handgun which police found on his cell phone. The prosecutor said those photographs were relevant because they "show a handgun similar in description" to the

3

gun seen "by eyewitnesses." The trial court overruled the objection. It found that "the probative value outweighs the prejudicial effect." It said the photographs were taken "close in time" to the charged offenses and they depict a type of gun that is consistent with the ballistics evidence.

DISCUSSION

*Admitting Dewey's Cell Phone Photographs*

Dewey contends the trial court abused its discretion by not excluding his cell phone photographs taken before the July 4th incident. Those photographs showed, among other things, a handgun and Dewey posing with that weapon. Dewey claims this evidence was unduly prejudicial and inadmissible for any purpose. (Evid. Code, § 352.) We disagree.

"'A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Brown* (2003) 31 Cal.4th 518, 534.) "Evidence is relevant when no matter how weak it may be it tends to prove the issue before the jury." (*People v. Hess* (1951) 104 Cal.App.2d 642, 676.) But "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

The prosecution may introduce evidence of the defendant's possession of weapons if they are relevant to prove the charged offenses. (*People v. Homick* (2012) 55 Cal.4th 816, 876.) Our Supreme Court has stated, "'[W]e have also held that when weapons are otherwise relevant to the crime's commission, but are not the actual murder weapons, they may still be admissible.'" (*Ibid.*) "When the specific type of weapon used to commit a homicide is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in

4

defendant's possession was the murder weapon." (*People v. Riser* (1956) 47 Cal.2d 566, 577, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Photographs of guns that could have been used to commit the charged offenses may be admitted into evidence. (*People v. Price* (1991) 1 Cal.4th 324, 434.)

Here Dewey was charged with murder (count 1), attempted murder (count 2), and possession of a firearm by a felon (count 3). The prosecution alleged that he committed counts 1 and 2 for the benefit of a criminal street gang and that he committed all three counts with "a handgun." Dewey ultimately was only convicted on count 3. But we review the trial court's decision from the perspective of the charges pending at the time the court made its rulings and the grounds for admitting that evidence.

*Admissibility of Dewey's Cell Phone Photographs on the Murder Count*

Dewey notes all of his cell phone photographs and photographs of him with the handgun were taken in late June. He claims they were not relevant because they were taken before the July 4th incident. We disagree.

People's exhibit 22 is a June 30, 2008, photograph of the handgun taken from Dewey's cell phone. The trial court found the handgun depicted in this exhibit was consistent with the ballistics evidence. That evidence showed that the weapon fired on July 4th was a nine-millimeter handgun.

Prosecution's exhibit 63 shows Dewey with a handgun in his waistband. The trial court found the gun "is partially displayed" as only the "butt" of the weapon is shown "in the waistband." This photograph was taken on June 29, 2008, from Dewey's cell phone.

People's exhibit 64 shows Dewey and another man pointing guns at each others' heads. The trial court found the handgun was "partially displayed" in Dewey's hand. This cell phone photograph was taken on June 30, 2008.

The prosecutor properly introduced the photograph of the handgun (exhibit 22) and the photographs of Dewey posing with the handgun (exhibits 63 and 64) to show that the handgun "could have been" the murder weapon in the July 4th shooting. (*People v. Riser*, *supra*, 47 Cal.2d at p. 577, see also *People v. Price*, *supra*, 1 Cal.4th at p. 434;

5

*People v. Simeone* (1945) 26 Cal.2d 795, 805 [evidence that defendant possessed a .38-caliber gun prior to the date of the offenses "clearly" was admissible].)

The trial court said the photographs were "[v]ery relevant" and were taken "close in time" to the charged offenses. Vargas's testimony tied the gun in exhibit 22 to Dewey on July 4th. Vargas said Dewey pulled the gun "from his waist." Exhibit 63 showed Dewey with the handgun in his waistband. The prosecution claimed the man with the gun was right-handed. Exhibit 64 showed Dewey holding the gun in his right hand.

Dewey cites *People v. Archer* (2000) 82 Cal.App.4th 1380, 1392-1393, and contends the trial court erred by introducing the cell phone photographs. In *Archer*, the defendant was charged with committing murder with a knife. The Court of Appeal held the trial court erred by admitting several knives that police had discovered. It noted that only two of the knives were properly admitted as relevant evidence. The additional knives were erroneously admitted because they could not have been the murder weapon. They were not relevant "to determination of the guilt or innocence of the defendant." (*Id*. at p. 1393.) Consequently, where the prosecution introduces weapons it claims to be the murder weapons, evidence about other weapons may be excluded. (*People v. Riser*, *supra*, 47 Cal.2d at p. 577.)

Here, by contrast, the prosecution did not have the murder weapon. Unlike *Archer*, the prosecutor in this case had Vargas's testimony as relevant evidence to claim the handgun in the photographs was admissible because it could have been the murder weapon. (*People v. Riser*, *supra*, 47 Cal.2d at p. 577.)

*Introducing the Cell Phone Photographs as Evidence on Count 3*

The cell phone photographs were also probative evidence on the possession of a firearm by felon offense (count 3). (§ 12021.) They were taken in late June 2008, only four or five days before the section 12021 offense that was alleged to have been committed on July 4th. They showed his access to the weapon and a highly probative course of conduct. In the days shortly before July 4th, Dewey repeatedly posed with a handgun he was prohibited from possessing as a felon.

6

Dewey suggests photographs taken before the July 4th date charged in the information were not admissible for the section 12021 offense. But appellate courts have rejected that claim. (*People v. Neese* (1969) 272 Cal.App.2d 235, 244-245 [evidence of defendant's possession of a gun prior to date of the section 12021 offense alleged in the information was properly admitted].) "The proof need not conform to the exact date laid in the information, it being sufficient to prove the commission of the offense at any time prior to the filing of the information within the statutory period . . . ." (*Id.* at p. 245.) "Possession of a firearm for even a limited time and purpose may be sufficient to bring defendant within the statute." (*Ibid.*) "'Possession of [a gun] may be proved circumstantially . . . .'" (*Ibid.*)

The photographs in combination with eyewitness testimony and other evidence constitute strong proof that Dewey possessed the firearm on July 4th. An expert testified that a nine-millimeter ammunition round found in a search of Dewey's property had the same gun markings as the nine-millimeter shell casings found at the crime scene. (*People v. Thompson* (1977) 72 Cal.App.3d 1, 5.) Vargas testified the gun shown on Dewey's cell phone photograph (exhibit 22) was similar to the one he saw Dewey holding on July 4th. Photographs showing Dewey's willingness to repeatedly pose with that handgun were admissible and highly probative evidence on the possession element of the section 12021 offense. (*People v. Neese*, *supra*, 272 Cal.App.2d at pp. 244-245.) Ramirez's description of the man holding the gun on July 4th was consistent with Dewey's appearance. Dewey claims this evidence was prejudicial. But "[t]he prejudice that section 352 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.'" (*People v. Branch* (2001) 91 Cal.App.4th 274, 286.) Dewey has not shown error.

*Admitting Dewey's Cell Phone Photographs as Impeachment and Gang Evidence*

Dewey contends the trial court should have excluded prosecution exhibit 84. Dewey and the People claim exhibit 84 shows Dewey with "a firearm at his waist." But they are not correct as there is no gun shown in that exhibit. It is simply a cell phone photograph showing Dewey posing as a gang member. The prosecution introduced this

7

photograph to impeach Hoffman. Hoffman testified Dewey was not violent or aggressive. She said he was a very "caring" and "compassionate" person, and that he was always happy and smiling. But when she saw this photograph, she admitted this was not the way he appeared when she was with him. "'[T]he trial court retains discretion to admit . . . evidence offered for impeachment.'" (*People v. Brown*, *supra*, 31 Cal.4th at p. 534.) The prosecution could show that her positive opinion of Dewey was based on incomplete knowledge.

The prosecutor also used a cell phone photograph of Dewey pointing a gun at the head of another man (exhibit 64) to impeach Shuraki's credibility after he testified that Dewey was nonviolent. The defense made no objection and waived a claim of error. (*People v. Abel* (2012) 53 Cal.4th 891, 924.) But even on the merits, the result is the same.

The defense introduced Shuraki's and Hoffman's testimony to prove Dewey had a nonviolent lifestyle. The defense suggested Dewey had distanced himself from the gang. The prosecution's gang expert testified that a gang member who wants to distance himself from the gang would not: 1) "hang out with fellow gang members" or 2) "take pictures of himself holding a gun to someone's head." Exhibit 81 showed Dewey with another gang member and exhibit 64 showed him holding a gun to a man's head. Exhibit 84 showed him posing as a gang member. The cell phone photographs were properly introduced as impeachment evidence (*People v. Abel*, *supra*, 53 Cal.4th at pp. 928-929; *People v. Brown*, *supra*, 31 Cal.4th at p. 534) and to support the prosecution's claim that Dewey was currently living a gang lifestyle (*People v. Garcia* (2008) 168 Cal.App.4th 261, 277-278 [photograph of gang members "brandishing guns" was properly introduced as part of relevant gang evidence]).

Dewey argues this evidence should have been excluded as cumulative because the trial court admitted gang expert testimony. But the prosecution had the burden to prove the gang allegations that the defense was disputing. The photographs show the most current view of his lifestyle near the time of the charged offenses. A cumulative evidence objection is properly overruled where, as here, the evidence may assist "the jury in understanding and evaluating the testimony presented to them." (*People v. Wilson*

8

(1992) 3 Cal.4th 926, 938; see also *People v. Crittenden* (1994) 9 Cal.4th 83, 134-135 [photographs do not have to be excluded simply because the prosecution introduced testimony on the same subject matter].)  The photographs were not unduly prejudicial or inflammatory given the subject matter and the testimony about the violent nature of the charged offenses.  (*People v. Abel*, *supra*, 53 Cal.4th at p. 929.)

*The Expert's Photograph of a Handgun*

Dewey claims it was prejudicial error for the trial court to admit prosecution exhibit 69, a "photograph of a profile of a semi-automatic firearm."  We disagree.  The prosecution introduced evidence showing the relevance of this type of weapon for this case.

Moreover, as the People note, there was no undue prejudice to Dewey. Dewey was not in this photograph and this was not one of the photographs from his cell phone.  As the prosecutor noted, it was simply a photograph used "as an example" of the parts on the firearm and how the firearm leaves "characteristic marks."  The prosecution's expert used this exhibit to testify how the weapon operates.  This was evidence that may be admitted to show the mechanics of how the crime was committed.  (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 498.)  The photograph was properly admitted to assist in the presentation of the expert testimony.  (*People v. Price*, *supra*, 1 Cal.4th at p. 434.)

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

9

Monica Bachner, Judge

Superior Court County of Los Angeles

_____

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.