Filed 7/14/15  P. v. Zylstra CA4/1
Received for posting on 8/13/15

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067474 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVA801416) |
| ALICE MARIE ZYLSTRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Ingrid A. Uhler, Judge.  Affirmed.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Alice Marie Zylstra appeals from her second degree

murder conviction. Zylstra killed Patricia Gough on Easter Sunday 2008, when Zylstra drove her car through a red light and "T-boned" Gough's car. At the time of the collision, Zylstra had a blood alcohol concentration (BAC) of 0.23 percent; Zylstra also had previously been convicted of driving under the influence (DUI) on two separate occasions and had been arrested in a third incident in which she had been driving under the influence and collided with another vehicle. As in the present case, in two of the prior DUI incidents Zylstra had fled the scene of a collision and evidence of her prior flight was admitted into evidence at her murder trial. Contrary to her argument on appeal, we find no error or abuse of discretion in the trial court's admission of evidence of Zylstra's prior flight.

FACTUAL AND PROCEDURAL SUMMARY

A. Prosecution Case

At 9:00 p.m. on Easter Sunday 2008, Zylstra drove through a red traffic signal at the intersection of Arrow and Alder in the City of Fontana. After her car collided with a car Gough was driving, witnesses at the scene pulled Zylstra from her car and helped her sit down on the curb. Within a minute of being pulled from her car and helped to the curb, Zylstra got up and began running down the street. One of the witnesses gave chase and saw her run between buildings and jump over a three- to four-foot chain link fence; the witness eventually found her hiding in some bushes at the end of a cul-de-sac.

Thereafter, law enforcement officers administered a series of field sobriety tests, which Zylstra failed. After she was advised of her Fifth Amendment rights, Zylstra told a law enforcement officer: "'It doesn't matter because I drank. I'm at fault.'" Zylstra's

2

blood was drawn two hours after the collision and, at that point, she had a BAC of 0.19 percent. At trial, an expert testified that Zylstra's BAC was likely 0.23 percent at the time of the collision.

Gough suffered severe internal injuries, loss of blood and a consequent stroke. She died six days after the collision.

At the time of Gough's death, Zylstra had been involved in three DUI incidents: in 1989, in 1993, and in 2001. The 1993 and 2001 incidents involved collisions. In the 1993 incident, Zylstra was wrestled to the ground by a witness after running away from the collision and the record suggests this incident lead to her conviction of battery on a peace officer (Pen. Code,[1] § 243, subd. (c)). In 2001, Zylstra initially tried to drive away after the collision but was stopped by her passenger, who took her keys, whereupon Zylstra walked away from the scene and hid in a friend's house.

B. Defense Case

Zylstra testified in her own defense. Zylstra testified that she had two beers hours before the collision and that the collision occurred because she had a seizure. At the scene of the accident, although Zylstra admitted she had been drinking, she did not mention any seizure. Zylstra further testified both that she was unaware she had fled from the collision and that she left the scene to get help.

Six months after the accident, while Zylstra was in jail, Zylstra did suffer a seizure. However, a treating physician testified the seizure was attributable to a fast

---

[1] All further statutory references are to the Penal Code.

growing tumor which in all likelihood Zylstra did not have at the time she killed Gough. At the time of the jail seizure, Zylstra advised physicians that it was her first seizure.

The jury convicted Zylstra of second degree murder and vehicular homicide with gross negligence. (§§ 187, subd. (a), 191.5, subd. (a).) The jury also found that she had suffered two prior DUI convictions: one in 1989 and one in 2001.[2] (§ 191.5, subd. (d).) The trial court sentenced Zylstra to prison for a term of 15 years to life.

DISCUSSION

I

On appeal, Zylstra contends the trial court erred in admitting evidence that in the two prior DUI incidents involving collisions, Zylstra fled before being apprehended. We find no abuse of discretion in admission of evidence of her prior flight.

A. Legal Principles

As the Attorney General points out, the admission of evidence is in general governed by Evidence Code sections 210, 351, and 352. Evidence Code section 351 states: "Except as otherwise provided by statute, all relevant evidence is admissible." Evidence Code section 210 defines relevant evidence as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Although all relevant evidence is admissible, Evidence Code section 352 gives a trial court considerable discretion in excluding some otherwise admissible

---

2    As we have noted, the 1993 DUI incident appears to have led to Zylstra's conviction of battery on a peace officer and was not charged as a prior DUI conviction.

4

evidence: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Pertinent here too is Evidence Code section 1101, subdivisions (a) and (b). In general, Evidence Code section 1101 subdivision (a) bars the use of evidence of a person's character or specific instance of bad conduct when offered "to prove his or her conduct on a specified occasion." However, Evidence Code section 1101, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

In explaining why evidence of prior bad acts is admissible to prove particular mental states, such as intent, as opposed to the simple propensity to commit a crime, the court in *People v. Robbins* (1988) 45 Cal.3d 867, 879-880, stated: "The reasoning underlying use of an actor's prior acts as circumstantial evidence of that actor's later intent is well explained by Wigmore. It is based on 'the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting

5

by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.  [¶]  . . . In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent.'  (2 Wigmore, Evidence (Chadbourn rev. 1979) § 302, at p. 241; see also Wydick, *Character Evidence: A Guided Tour of the Grotesque Structure* (1987) 21 U.C. Davis L. Rev. 123, 166–169; Imwinkelried, *supra*, § 4:01.)"

We review most of a trial court's evidentiary rulings for abuse of discretion.  (See *People v. Branch* (2001) 91 Cal.App.4th 274, 282.)  Where, as in the overwhelming preponderance of instances, the determination as to whether to admit or exclude evidence has been left to the trial court's discretion, "[w]e will reverse only if the court's ruling was 'arbitrary, whimsical, or capricious as a matter of law.  [Citation.]'  [Citation.]"  (*Ibid*.)

B.  Analysis

Admission of evidence of Zylstra's flight from the scene of the two earlier

collisions was relevant to two issues at the trial, other than her disposition to drive while drunk. Moreover, the probative value of the evidence with respect to those issues far outweighed any undue prejudice to Zylstra. Thus, contrary to her argument on appeal, the trial court did not err in admitting the evidence.

The issues with respect to which the evidence of flight was relevant are:

1. *Consciousness of Guilt/Malice*

Evidence of flight after commission of a crime supports an inference of consciousness of guilt and constitutes an implied admission. (*People v. Williams* (2013) 56 Cal.4th 630, 679; see also *People v. Brooks* (1966) 64 Cal.2d 130, 138.) Thus, evidence of Zylstra's two prior attempts to flee from the scene of separate DUI collisions would support an inference that on both occasions she was aware of her culpability.

Evidence of Zylstra's consciousness of her own culpability in the prior DUI-related collisions was in turn directly related to the question of whether, when she was driving toward Gough while intoxicated, she consciously disregarded the risk her conduct posed and thus acted with the malice required to find her guilty of murder. "[M]alice may be implied when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." (*People v. Watson* (1981) 30 Cal.3d 290, 296, italics omitted.) "[A] finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved." (*Id*. at pp. 296-297.)

Here, the evidence that Zylstra was aware of the risk her conduct created can be seen not only in the prior collisions but in her flight from them. In both instances,

7

Zylstra's flight demonstrated her immediate recognition of the seriousness of what had occurred and her own responsibility for it; in light of that prior behavior and her immediate recognition of the consequences of her conduct, not once, but twice, the jury could reasonably infer that later when Zylstra decided to drive while intoxicated and toward Gough, she was acutely aware of the risk to human life that she was creating. Because her subsequent flight from the Gough collision conformed with her response to the earlier collisions, taken together her consistent response to the collisions she caused created a powerful and appropriate inference that she was well aware of the risk her behavior created.

2. *Rebuttal of Unconsciousness/Getting Help*

As we have noted, at trial Zylstra attempted to show that at the time she killed Gough a tumor had caused a seizure and that she was unaware of what she was doing and alternatively that she left the scene to summon help.

Zylstra's history of collisions and *flight therefrom* are plainly inconsistent with her seizure defense and her claim that she left the scene of the Gough collision to summon help. Her consistent flight from collisions in which she was driving under the influence raised the strong inference that, in each instance, she was fully aware of what had happened, and, therefore, at the scene of the Gough collision, she was neither suffering from a debilitating seizure nor trying to summon help. (See *People v. Robbins*, *supra*, at 45 Cal.3d at pp. 879-880.)

As proof of Zylstra's consciousness of guilt and the consequent inference of malice, as well as rebuttal to Zylstra's claims she was suffering a seizure and left to

8

summon help, the evidence of prior flight was not barred by Evidence Code section 1101, subdivision (a). The evidence of flight showed Zylstra's subjective mental state at the time of the crime and squarely rebutted her contention she was acting innocently and therefore was allowed under Evidence Code section 1101, subdivision (b). (See *People v. Robbins*, *supra*, at 45 Cal.3d at pp. 879-880.)

Moreover, the trial court did not abuse its discretion in implicitly finding the probative value of the evidence exceeded any undue prejudice to Zylstra. Although we recognize evidence of Zylstra's prior flight did not reflect well on her character, that prejudice was slight compared to evidence she drove with a 0.23 percent BAC, killed Gough and fled from the scene of the fatal Gough collision. On the other hand, evidence of the prior flight was quite valuable in providing the jury with evidence: 1) that before hitting Gough, Zylstra knew almost on an instinctive level that driving while intoxicated was very dangerous; 2) that she was not suffering from any seizure; and 3) that she did not flee from the scene to find help for Gough.

Because the flight evidence was relevant, was not barred by Evidence Code section 1101, subdivision (a), and because it was far more probative than prejudicial, the trial court did not err in admitting it.

II

Finally, Zylstra argues that her counsel was ineffective in failing to directly object to the flight evidence. However, as Zylstra's brief itself points out, in light of statements the trial court made in the course of ruling that evidence of Zylstra's prior DUI convictions would be admitted, including specific reference to evidence of her prior

flight, any objection would have been futile and was not required to preserve the issue on appeal. (See *People v. Welch* (1993) 5 Cal.4th 228, 237.) Thus, counsel was not ineffective.

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.