[No. A089941. First Dist., Div. Three. Aug. 2, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
EUEL BRANCH, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

COUNSEL

Eric W. Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McGUINESS, P. J.—Euel Branch (appellant) was convicted by a jury of two sexual offenses: (1) committing a lewd and lascivious act upon a child under the age of 14; and (2) using a foreign object to penetrate the genital opening of a child under the age of 14 who was more than 10 years younger than the perpetrator. For both offenses, appellant's victim was Sarah G. An allegation that appellant had had substantial sexual conduct with Sarah was also found true. Appellant was sentenced to the low term of three years for the first offense; a three-year term for the second offense was ordered stayed pursuant to Penal Code section 654.

Appellant advances several arguments in support of a single appellate claim—that the trial court erred in admitting evidence of a series of uncharged prior sexual offenses committed more than 30 years prior to the offenses involving Sarah. We affirm.

## I. FACTS

### A. *Prosecution case*

#### 1. *Current offenses*

Sarah, who was born in 1985, was the first witness for the prosecution. Sarah has lived with her grandmother, Barbara, since she was eight months

old. In December 1996, Barbara, Sarah and Sarah's sister, Molly C., moved to appellant's home in Fremont. They moved because Barbara wanted to be with her mother, Vadas B., who was ill. Vadas and appellant had been married for many years. In December 1996, they were legally separated but living together.

One night in early February 1997, Sarah went into the living room. Appellant was lying on some "egg crate" pads, where he customarily slept. Sarah lay down on the floor to watch television. She lay on her side between appellant and a table that was close to appellant's egg crate pads. Sarah's head was pointed in the opposite direction from appellant's. At one point, appellant's right hand fell onto Sarah's right leg. He moved his hand up to her hip. He then put two fingers inside her vagina and moved them around. While appellant was touching Sarah, his other hand was down the front of his pants. His eyes were closed at all times. After appellant touched Sarah, she got up and went to bed. She told Barbara about the touching a "couple [of] weeks" later.

Sometime after Sarah was touched but before she told Barbara, appellant told Barbara that Sarah had sworn at him. Sarah found out from Barbara, who was mad at her one day when she came home from school. Sarah denied swearing at appellant.

After Sarah reported the touching to Barbara, she was given a physical examination at a hospital. She later talked to a police detective, who arranged for her to make a scripted phone call to appellant. In the course of that recorded call, appellant denied having put a hand under Sarah's nightgown. However, later on in the conversation, he said to Sarah, "If I did touch you that way, I'll promise I'll never touch you that way again, honey."

Dr. James Crawford is the medical director of the Center for Child Protection at Children's Hospital in Oakland. Dr. Crawford described Sarah's examination by Carmenza Salgado, a physician's assistant, at the hospital. The results of the examination were "inconclusive." The examination neither "approve[d] or disprove[d] that something had occurred."

### 2. *Uncharged prior sexual offenses*

Barbara was born in 1946. Appellant is her stepfather. She was 10 or 11 years old when she met appellant. Barbara testified that, between the ages of 12 and 15, appellant touched her inappropriately on numerous occasions. During that period, he "swiveled" his groin against her a "couple of times a week." On three or four occasions, he ran his hands over her breasts on the

outside of her clothing. Once or twice a week, he would come into Barbara's room at night and touch her in the area of her vagina over her panties. On occasion, appellant would look at Barbara and touch himself inside his pants. On some occasions, when appellant did that, Barbara's mother was in the room. She told Barbara not to look at appellant. On each occasion after appellant did something inappropriate with Barbara, he would tell Barbara's mother that Barbara had done something wrong. To protect herself from appellant, Barbara ran away from home on more than 11 occasions.

### 3. *Defense case*

Appellant testified in his own defense. He first denied doing any of the things Barbara had accused him of doing. He stated that Sarah had, in fact, sworn at him on one occasion after he found some cookies that she had been unable to locate in the garage. He testified that he had told Sarah during the course of the call arranged by the police that he would not do "it" anymore just to "appease[]" her. He further verified that, when he spoke to the police after being accused of assaulting Sarah, he told them that, if he did touch Sarah, it was unintentional.

Garry T., Barbara's brother, testified that he was extremely protective of his sister, while they were growing up, often getting into fights in an effort to protect her. He stated that Barbara never told him that appellant had done any of the things she had accused him of in court.

Dr. Larry Wornian, a psychologist, testified about tests he had conducted on appellant, as well as interviews he had conducted with appellant and others. He opined that appellant had "normal sexual interests" and that nothing he had observed led him to believe that appellant would "readily meet the kind of psychological profile that is found in men who molest children."

Dr. Fernando Ulloa is a pediatrician. He examined Salgado's report of her examination of Sarah. To Dr. Ulloa, the report "provided no information other than there's no injury."

### II. ARGUMENTS

Appellant advances several arguments. He first asserts that the trial court erred in permitting Barbara to testify about prior uncharged sexual acts pursuant to Evidence Code[1] section 1101, subdivision (a). He also contends that the court improperly failed to exercise its discretion to exclude that

---

[1] All further statutory references are to the Evidence Code.

evidence pursuant to section 352, thereby denying him his right to a fair trial. He finally argues that section 1108, which permits the introduction of evidence of prior sexual offenses under some circumstances, violates the ex post facto clause of the United States Constitution.

## III. ANALYSIS

### A. *Evidence of Uncharged Prior Sexual Acts Was Admissible Under Sections 1108 and 1101, Subdivision (b), Unless Exclusion Was Required Under Section 352*

Section 1101, subdivision (a), establishes a general rule that character evidence is inadmissible to prove a defendant's conduct on a specific occasion. However, as relevant here, subdivision (a) of section 1101 is subject to two significant limitations. First, under subdivision (b) of section 1101, evidence that a defendant has committed a crime, civil wrong or some other act may be admissible to prove certain facts, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ." In addition, subdivision (a) is subject to certain limitations found in that subdivision itself: "*Except* as provided in this section and in Sections 1102, 1103, *1108*, and 1109, evidence [of character is inadmissible]." (Italics added.) Section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Here, the prosecution filed a pretrial motion, describing the testimony it wished to present regarding appellant's sexual assaults on Barbara and seeking admission of that testimony under both section 1101, subdivision (b), and section 1108. The prosecution asserted that the testimony was admissible under section 1108 because appellant was alleged to have committed acts with both Barbara and Sarah that constituted "sexual offenses" as defined in subdivision (d) of that section. As to section 1101, subdivision (b), the prosecution argued that the testimony was admissible to establish appellant's intent, plan and/or absence of mistake. When it ruled on the prosecution's motion, the trial court found the testimony admissible under both code sections. The court then ordered that Barbara's testimony be subject to a section 402 hearing and permitted the defense to renew its request to exclude the testimony after that hearing. When the section 402 hearing was completed, the court again ruled that Barbara's testimony was admissible under both section 1108 and section 1101.

Because the court found the testimony admissible under both sections, we would only find error in its admission if the testimony were inadmissible

under both. In addressing that issue, we first observe that appellant has advanced no argument supporting a claim that the court abused its discretion in admitting the testimony under either section, except, as discussed in the following part, for a claim that the court did not properly exercise its discretion under section 352. We note, however, that the testimony was admissible under both sections.

■ Section 1108 was enacted in 1995. (*People v. Fitch* (1997) 55 Cal.App.4th 172, 178 [63 Cal.Rptr.2d 753] (*Fitch*).) The effect of section 1108 was "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, section 1108 implicitly abrogates prior decisions . . . indicating that 'propensity' evidence is per se unduly prejudicial to the defense. [Citation.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*).) Our Supreme Court has determined that the admission of evidence regarding a defendant's propensity to commit a sex act under section 1108 does not violate the defendant's right to due process of law. (*Falsetta, supra,* at pp. 910, 922.) ■ Here, both the current offenses and the offenses involving Barbara were ones defined as qualifying "sexual offenses" under section 1108, subdivision (d). Thus, unless Barbara's testimony was inadmissible under section 352, the trial court did not err in allowing the prosecution to present it to the trier of fact.

We also observe that the testimony was admissible under each of the theories presented by the prosecution under section 1101, subdivision (b). Plainly, appellant's intent in touching Sarah was at issue in the case, as both charged offenses required proof that appellant's actions were undertaken for the purpose of sexual gratification. Further, the evidence was relevant to establish a common plan or scheme on appellant's part—that of molesting 12-year-old girls in his home. Finally, the evidence was relevant to prove lack of mistake or accident on appellant's part when he touched Sarah. As reflected above, appellant claimed that, if he ever touched Sarah, it was unintentional. In sum, Barbara's testimony was admissible under section 1101, subdivision (b), unless it should have been excluded under section 352. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757] (*Ewoldt*).)

We now turn to the question of whether or not Barbara's testimony should have been excluded under section 352.

B. *The Trial Court Did Not Abuse Its Discretion in Failing to Exclude Evidence of Prior Uncharged Sexual Offense Pursuant to Section 352*

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its

admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." ■ We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion. (*People v. Harris* (1998) 60 Cal.App.4th 727, 736-737 [70 Cal.Rptr.2d 689] (*Harris*).) We will reverse only if the court's ruling was "arbitrary, whimsical, or capricious as a matter of law. [Citation.]" (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614 [38 Cal.Rptr.2d 868].)

■ Appellant first seems to argue that the trial court abrogated its duty to undertake an analysis under section 352: "The record is bereft of any indication that the trial court understood and undertook its obligation to perform the weighing function prescribed by [section 352.]" That argument is totally without merit. The record establishes that the colloquy regarding admission of Barbara's testimony addressed many of the factors relevant to a section 352 decision. Further, the court indicated, when it announced its ruling, that it understood that it was required to make a "balancing determination under Evidence Code section 352." In addition, in setting out its reasons for determining that the evidence was admissible, the court specifically referred to section 352 and described the balance required between the probative value of the proffered evidence and the prejudice associated with its admission. We now turn to the heart of the issue: Did the trial court abuse its discretion under section 352? (*Harris, supra,* 60 Cal.App.4th at pp. 736-737.)

■ In *Ewoldt,* the Supreme Court discussed a number of factors that should be considered in making a judgment, pursuant to section 352, about admissibility of evidence of uncharged offenses, where introduction is sought under section 1101, subdivision (b). (*Ewoldt, supra,* 7 Cal.4th at pp. 404-406.) In *Harris*, the Third District applied the same criteria to admission of evidence proffered under section 1108. (*Harris, supra,* 60 Cal.App.4th at pp. 737-741.) As cast by the *Harris* court, the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses. (*Ibid.*) We begin with the probative effect of the evidence.

■ As reflected in part III.A., *ante,* the evidence was highly probative on the issues of intent, common scheme or plan, and absence of mistake or accident, as permitted under section 1101, subdivision (b). Turning to its probative value under section 1108, evidence of a "prior sexual offense is indisputably relevant in a prosecution for another sexual offense." (*Fitch,*

*supra,* 55 Cal.App.4th at p. 179.) Indeed, the reason for excluding evidence of prior sexual offenses in such cases is not because that evidence lacks probative value; rather, it is because " 'it has too much.' [Citation.]" (*Ibid.*)

Appellant argues that the uncharged offenses were "dissimilar[] to the charged crimes" and, thus, had no bearing on the question of whether or not appellant committed the charged acts. The trial court compared the charged and uncharged offenses: "The Defendant is conducting inappropriate touching, sexual in nature, of the sexual, genital area of a 12-year-old child who is a female, who is related to him by marriage, in the same household, living together at the same time. And during the course of this action, apparently he, as to both victims, also makes the distinct or does the distinct act of looking at the victim's genital areas and then placing his hand inside his pants to self-stimulate himself." We find no error in the trial court's analysis. The evidence of appellant's offenses involving Barbara was highly probative in establishing appellant's use of a common scheme and plan with both victims. It was also probative in refuting the claim that appellant had touched Sarah by accident.[2] We now turn to the four factors discussed in *Harris* that may militate against admission.

The first factor we must consider is whether the uncharged offenses were more inflammatory than the charged offenses. Here, the trial court considered the many similarities between the charged offenses and the prior uncharged offenses. The court noted that the charged offenses could be deemed "inflammatory in nature." The court also observed that the prior offenses could be seen as "inflammatory." The record does not indicate that the trial court found either more inflammatory than the other. While appellant seems to have engaged in a wider variety of sexual offenses over a longer period of time with Barbara, the nature of the offenses was very similar to the ones involving Sarah. Thus, it is unlikely that the jury would

---

[2]In *Ewoldt,* the Supreme Court observed that the probative value of uncharged misconduct is affected by "the extent to which its source is independent of the evidence of the charged offense. For example, if a witness to the uncharged offense provided a detailed report of that incident without being aware of the circumstances of the charged offense, the risk that the witness's account may have been influenced by knowledge of the charged offense would be eliminated and the probative value of the evidence would be enhanced. The probative value of such evidence would increase further if independent evidence of additional instances of similar misconduct, committed pursuant to the same design or plan, were produced." (*Ewoldt,* *supra,* 7 Cal.4th at pp. 404-405.) Here, Barbara testified that she reported appellant's assaults to a police officer at the time they occurred. The record does not indicate that Barbara's report was "detailed." In addition, Barbara evidently made no additional reports to anyone about appellant's assaults until she learned that Sarah had been molested. Accordingly, Barbara's testimony lacked the "independen[ce]" that would have increased its probative value under *Ewoldt.*

have been so prejudiced against appellant as a consequence of Barbara's "inflammatory" testimony that he was denied a fair trial.

The second factor—confusion of issues—is more difficult to assess. ▮ As noted above, section 352 permits the exclusion of evidence if its probative value is outweighed by the probability that its admission will create a substantial danger of "confusing the issues." In *Ewoldt,* the Supreme Court discussed confusion of issues in terms of whether or not a defendant has been convicted of the uncharged prior offense. (*Ewoldt, supra,* 7 Cal.4th at p. 405.) If the prior offense did not result in a conviction, that fact increases the danger that the jury may wish to punish the defendant for the uncharged offenses and increases the likelihood of confusing the issues "because the jury [has] to determine whether the uncharged offenses [in fact] occurred." (*Ibid.*) That same approach to confusion of issues was adopted by *Harris.* (*Harris, supra,* 60 Cal.App.4th at pp. 738-739.) ▮ Here, while Barbara did not specifically testify that appellant was never charged and convicted of the earlier offenses, she did testify that she reported them to a police officer on one occasion and that "[n]othing" came of that report. Thus, it is possible that the jury may have wanted to punish appellant for committing the prior uncharged offenses, rather than assessing his guilt or innocence of the charged offenses. (See *Ewoldt, supra,* 7 Cal.4th at p. 405). However, the record provides no evidence to support that hypothesis. The jurors asked several questions of the court during deliberations, none of which related to issues of "other offenses," generally, or Barbara's testimony, specifically. In addition, the jurors asked to have testimony read back on three occasions. In each instance, they asked for Sarah's testimony only. In sum, we see no indication that the jurors were confused by the introduction of evidence of uncharged offenses, nor do we see any indication that the jurors wished to convict appellant for his assaults on Barbara, rather than his molestation of Sarah.

The third factor—remoteness of the uncharged prior offenses—was also considered by the trial court. Certainly, a 30-year gap between the offenses involving Barbara and the offenses involving Sarah is a substantial one. ▮ No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. (*Harris, supra,* 60 Cal.App.4th at p. 739 [No "bright-line rule" exists].) In *Ewoldt,* a 12-year gap was not deemed too great. (*Ewoldt, supra,* 7 Cal.4th at p. 405.) In *Harris,* the court observed that a 23-year gap is a "long time." (*Harris, supra,* 60 Cal.App.4th at p. 739.) That gap, coupled with the fact that Harris had led a "blameless life" during that 23-year period, led the *Harris* court to conclude that the remoteness of the prior offense militated against its admission. (*Ibid.*) In *People v. Waples* (2000) 79 Cal.App.4th 1389, 1393-1395 [95

Cal.Rptr.2d 45] (*Waples*), uncharged sexual offenses involving the same victim occurring between 15 and 22 years before trial were not found too remote, in part because the similarities in the prior and current acts "balanced out the remoteness." (*Id.* at p. 1395.)

Remoteness of prior offenses relates to "the question of predisposition to commit the charged sexual offenses." (*Harris, supra,* 60 Cal.App.4th at p. 739.) In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, as reflected above, significant similarities between the prior and the charged offenses may "balance[] out the remoteness." (*Waples, supra,* 79 Cal.App.4th at p. 1395.) Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses.

In *Harris,* the defendant was charged with using a position of trust as a mental health nurse to engage in sex with two women who were "vulnerable due to their mental condition." (*Harris, supra,* 60 Cal.App.4th at pp. 730-732.) The prior offense involved a brutal rape, in which Harris beat his victim and stabbed her. (*Id.* at p. 733.) In finding that the prior offense was improperly admitted at trial, the *Harris* court noted the striking dissimilarities between the 23-year-old prior offense and the charged offenses and concluded that the prior offense had no "significant probative value" on any disputed issue. (*Id.* at pp. 740-741.)

■ Here, by contrast, the prior offenses and the current offenses were remarkably similar. As noted by the trial court, appellant first molested a 12-year-old stepdaughter, then a 12-year-old step-great-granddaughter. Moreover, appellant took advantage of the fact that each victim was staying in his home when the molestations took place. Further, in an evident attempt to shield himself from being found out, he lied and told each victim's principal female caretaker that the victim had recently done something wrong. In sum, the substantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses. (*Waples, supra,* 79 Cal.App.4th at p. 1395.)

The final factor is the consumption of time involved in addressing the prior offenses. Here, Barbara's testimony, including cross-examination, took only 71 minutes to present. Appellant's denial of her claims took up only a small portion of his overall testimony. The amount of court time involved in Garry's examination does not appear in the record. However, the reporter's transcript of his testimony covers only 22 pages. Thus, it does not appear as

if substantial court time was required to address the issues relating to the uncharged offenses.

In sum, the probative value of the uncharged offenses was great. On the other side of the equation, the four factors discussed in *Harris*, whether considered individually or collectively, did not weigh heavily in favor of excluding evidence of those offenses. Under section 352, exclusion of evidence is permissible only if its probative value is "substantially outweighed" by the "probability" that its admission will create a "substantial" danger of "undue" prejudice.

■■ It is important to keep in mind what the concept of "undue prejudice" means in the context of section 352. " 'Prejudice' as contemplated by section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice. . . . ' "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " [Citation.]' [Citation.]

"The prejudice that section 352 ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations]. "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' . . . In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008-1009 [62 Cal.Rptr.2d 164].)

■■ Here, appellant did not demonstrate to the trial court's satisfaction that he would be "unduly prejudiced," as that term is limited above, by the introduction of evidence of uncharged offenses. Nor did he demonstrate that any potential prejudice would "substantially" outweigh the probative value of the evidence. Nor has he established in his arguments before this court that the trial court abused its discretion in permitting the prosecution to

introduce evidence of the uncharged offenses involving Barbara. (*Harris, supra,* 60 Cal.App.4th at pp. 736-737.)

## C. *Section 1108 Does Not Violate the Ex Post Facto Clause of the Constitution\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. CONCLUSION AND DISPOSITION

The judgment is affirmed.

Corrigan, J., and Parrilli, J., concurred.

---

*See footnote, *ante*, page 274.