Filed 10/14/14  P. v. Tranquilino CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B251149 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA397613) |
| JUAN TRANQUILINO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara R. Johnson, Judge.  Affirmed, vacated in part, and remanded with directions.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant Juan Tranquilino of two counts of lewd act on a child under 14 years of age. (Pen. Code, § 288, subd. (a), counts 1 & 3.) The jury was unable to reach a verdict on an additional count of lewd act on a child under 14 years of age (count 2), as to which the trial court declared a mistrial. (Pen. Code, § 288, subd. (a).) The jury found true allegations as to both counts 1 and 3 that there were multiple victims, that appellant had previously been convicted of a sex offense (Pen. Code, § 667.61, subds. (a) & (b)), and that appellant had suffered a serious felony conviction that was also a prior strike conviction (Pen. Code, § 667, subds. (a)-(i)). The trial court sentenced appellant to 55 years to life in state prison, consisting of 25 years to life for each of counts 1 and 3 (Pen. Code, § 667.61), plus an additional five years for count 1 for the prior serious felony conviction.

In this appeal, appellant contends that the trial court abused its discretion under Evidence Code section 352[1] by allowing evidence to be admitted of prior incidents for which appellant was convicted of sexual abuse. Appellant further contends that section 1108, which makes evidence of such prior incidents admissible, is unconstitutional.

We reject appellant's contention that the trial court abused its discretion under section 352 in admitting evidence of appellant's prior sexual offenses. The constitutionality of section 1108 is long-settled, and we reject his argument in that regard as well. We therefore affirm appellant's convictions as to counts 1 and 3, as well as the true findings on the multiple victim and prior sex offense/prior strike conviction allegations.

In addition, appellant contends on appeal that the trial court erroneously believed that it did not have discretion to choose between consecutive or concurrent sentences for counts 1 and 3. The Attorney General concedes error, and we agree. Accordingly, we vacate the portion of appellant's sentence imposing consecutive sentences on counts 1

---

[1] All further undesignated statutory references are to the Evidence Code.

and 3, and remand the matter to the trial court with directions to exercise its discretion as to whether the sentences on counts 1 and 3 should run consecutively or concurrently.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.  Prior Sexual Misconduct Evidence:  M. P., Maria P., and Jessica P.**

Appellant was a close family friend of M., Maria, Jessica, and their four sisters when they were children, and he visited their home often.  He was the godfather of one of the sisters.

M., 19 years old at the time of trial, testified that when she was eight years old appellant began molesting her repeatedly by touching her vagina, kissing her, and putting his tongue in her mouth.  He once asked her to come to his apartment to help spray paint his bicycle.  Once inside his apartment, he pulled her toward his bed, but she was able to get him off of her and run out of the apartment.  When M. was eight years old, she went to court and testified about the touchings.

Maria, 18 years old at the time of trial, was six years old when appellant began touching her vagina under her clothes, often in the hallway of her apartment and while her sister M. was present.  Maria testified against appellant in a courtroom when she was five or six years old.

Jessica was 22 years old at the time of trial.  When she was 10 or 11, appellant repeatedly touched her vagina under her clothes and kissed her.  Appellant once kissed her while she was lying down on a bed in her apartment and gave her a hickey.  Jessica also had testified against appellant when she was 10 or 11 years old.

**II.  A. M. (Counts 1 & 2)**

A. M., born in April 1997, was 16 years old at the time of trial.  A. lived in a two-bedroom apartment along with her grandmother, uncle, mother (Jacqueline Castro), and two sisters (Veronica and Ashley).  When A. was about two years old, appellant became a family friend and began visiting her home twice a week to play video games with A.'s

3

uncle. When A. was six years old, she was left alone with appellant and he touched her thighs over her clothing. On later occasions, he progressed to touching her chest and vagina, also over her clothing. Appellant told A. he would do the same thing to her sisters if she told anyone. Shortly after these incidents occurred, appellant went to prison.

Appellant was released from prison when A. was seven years old. Appellant began visiting A.'s home again. On one occasion he masturbated in front of A. and put his ejaculate on her vagina. Castro, her mother, was home but was asleep.

When A. was eight years old and staying home because she was ill, appellant removed his clothes and showed A. his penis. He removed A.'s clothes and laid her on a couch, touched her vagina, chest, and legs, then put his penis into her vagina. He ejaculated onto A.'s vagina. Castro was home but sleeping. A. felt pain and was disgusted by appellant and repeatedly told him to stop, but he ignored her and continued until he ejaculated on her. Appellant told her if she told anyone he would do the same thing to her sisters. A. took a shower and waited in the bathroom until her grandmother came home. That was the last time appellant molested her.

When A. was 15 years old, Castro took her to a medical clinic because she wanted to know if A. was sexually active. The physician's assistant examining A. asked about whether she had had sexual relationships with anyone. Because she thought that doctors could tell if she had had sexual relations, she revealed that she had been raped by a family friend, and also said that she had a boyfriend with whom she had intercourse. She knew the physician's assistant would call the police and was relieved when he did so.

### III.    Veronica M. (Count 3)

A.'s sister, Veronica M., born in February 1994 and 19 years old at the time of trial, was five or six years old when appellant began visiting her family often. When Veronica was 10 years old, appellant began touching her vagina, buttocks, and chest, both over her clothing and under it. He did it whenever he had the opportunity, when her mother and grandmother were away or sleeping. Appellant told her to "just let it

4

happen," and that he "needed it." Veronica had been told by her mother and grandmother that appellant had been released from prison.

Appellant would entice Veronica and her sister Ashley to come close to him to see his drawings, and when they did he would touch them, starting at the waist and moving to the vagina. Veronica saw appellant touch Ashley the same way he touched her. She did not tell anyone because she was afraid she would be ignored. Veronica's uncle and mother were usually home when appellant touched her, but they were not in the same room. Her mother worked the graveyard shift and was often sleeping. When Veronica was 12 years old, the family moved to Victorville. Around that time, appellant stopped touching her.

When Veronica was about 15 or 16 years old, she told her mother during an argument that appellant had molested her, but Castro did not call the police. Veronica first told the police what appellant had done to her after A. told the doctor appellant had raped her.

## IV. Other Evidence

Castro testified that appellant was a close family friend and initially was kind to her children. Around the year 2000, she forbade appellant to visit her family. She did not call the police when Veronica told her appellant had abused her because she felt guilty for allowing appellant to come into her home, having been aware that he had abused other girls.

The parties stipulated that appellant was born in 1982, and that he had been in prison from 2003 through 2005.

Appellant did not present an affirmative defense.

## DISCUSSION

## I. Evidence of Other Sexual Offenses Was Properly Admitted

### A. *Factual Background*

5

Before trial, the prosecution moved to admit witness testimony pursuant to section 1108 regarding appellant's uncharged sexual misconduct. The prosecutor sought to introduce the testimony of the P. sisters, M., Maria, and Jessica. In addition, the prosecutor sought to introduce testimony regarding K.C., a victim of sexual misconduct for which appellant was arrested in 2003 but not convicted.

Defense counsel opposed the introduction of any such evidence. She further requested that the court bifurcate trial of appellant's prior convictions for the prior acts of sexual misconduct and asked that even if the court permitted the introduction of evidence pursuant to section 1108, that it exclude the fact of appellant's conviction for those offenses.

The court permitted bifurcation as to the evidence of the prior convictions and ruled that the evidence regarding the P. sisters was admissible because it was more probative than prejudicial. The court noted the evidence was directly relevant as propensity evidence because it involved the same class of crimes, was not remote in time,[2] and there was no uncertainty as to its truth because appellant had pled guilty. The prosecutor agreed not to introduce evidence of the fact of actual conviction for the prior sexual misconduct.

The court ruled that the evidence regarding K.C. was inadmissible as it was likely to confuse the jury by requiring the testimony of K.C.'s parents and a nurse because K.C. was only three years old when she was molested. The court also ruled that evidence that Castro banned appellant from her home after younger sister Ashley, who could not yet talk, pointed to her diaper to indicate appellant had touched her was speculative and therefore inadmissible.

B.  *Analysis Under Sections 1108 and 352*

---

[2]  Appellant's sexual misconduct with the P. sisters occurred in or about 2001 and 2002. In the instant case, the charged sexual misconduct with A. M. and Veronica M. occurred between 2002 and 2007.

Appellant contends that his convictions must be reversed because the evidence of his prior sexual offenses was unduly prejudicial. He argues that "[t]he court erred in admitting other offense evidence where its probity was wanting and where nothing but harm was worked by its admission." We disagree and find that, in admitting the other crimes evidence, the trial court rightly concluded that it was distinctly probative and not overly inflammatory.

The policy considerations underlying section 1108, which permits the introduction of evidence of a defendant's prior sexual misconduct, were thoroughly examined by our Supreme Court in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*). The court explained: "In 1995, the Legislature enacted section 1108 to expand the admissibility of disposition or propensity evidence in sex offense cases. Subdivision (a) of that section provides in pertinent part that 'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352 [permitting court to exclude evidence on weighing probative value and prejudicial impact].' . . .

"Available legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, section 1108 implicitly abrogates prior decisions of this court indicating that 'propensity' evidence is per se unduly prejudicial to the defense. (See, e.g., *People v. Alcala* (1984) 36 Cal.3d 604, 630-631 (*Alcala*).)

"As the Court of Appeal stated in one earlier case, 'Our elected Legislature has determined that the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed in criminal sexual offense cases by the policy considerations favoring the admission of such evidence. The Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. [Citation.]' (*People v. Fitch* (1997) 55

7

Cal.App.4th 172, 181-182, fn. omitted (*Fitch*); see also *People v. Soto* (1998) 64 Cal.App.4th 966, 983-984 [quoting from the legislative history of section 1108, 29B pt. 3 West's Ann. Evid. Code (1999 pocket supp.) foll. § 1108, pp. 40-41]; *Review of Selected 1995 Cal. Legislation* (1996) 27 Pacific L.J. 761, 762 [The Legislature 'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness.'].)" (*Falsetta*, *supra*, 21 Cal.4th at pp. 911-912.)

The *Falsetta* court continued: "[T]he case law clearly shows that evidence that [a defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his [or her] disposition or propensity to commit these offenses. As noted in *Alcala*, 'Such evidence "is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much*." . . . [Citations.]' (*Alcala*, *supra*, 36 Cal.3d at p. 631, italics added in *Alcala*; [additional citations omitted].)" (*Falsetta*, *supra*, 21 Cal.4th at p. 915.)

Of course not all evidence of prior sex offenses is admissible against a defendant accused of committing another sex crime. Trial courts must determine in each case whether admission of such evidence is appropriate by considering several factors. Evidence made admissible by section 1108 is expressly stated therein to be subject to exclusion under section 352.[3] "By reason of section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less

---

[3] Under section 352, admissible evidence may, in the trial court's discretion, be excluded if its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. (See, e.g., *People v. Balcom* (1994) 7 Cal.4th 414, 427 (maj. opn. of George, J.); *id.* at p. 431 (conc. opn. of Arabian, J.) (*Balcom*); *Fitch*, *supra*, 55 Cal.App.4th at p. 183; cf. *People v. Karis* [(1988)] 46 Cal.3d [612,] 638 [defining 'prejudice' under section 352]; *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138 [discretion to admit evidence of other acts of domestic violence under sections 352 and 1109]; [*United States v.*] *Guardia* [(10 Cir. 1998)] 135 F.3d [1326,] 1330-1331 [applying federal rule 403]; [*United States v.*] *Enjady* [(10 Cir. 1998)] 134 F.3d [1427,] 1433 [same].)

"In *Balcom*, we explained that the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense. (*Balcom*, *supra*, 7 Cal.4th at p. 427.) We also observed that the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses. (*Ibid.*)" (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

"By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (Evid. Code, § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.]" (*Fitch, supra,* 55 Cal.App.4th at p. 183.)

"We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion. (*People v. Harris* (1998) 60 Cal.App.4th 727, 736-737 (*Harris*).) We will reverse only if the court's ruling was 'arbitrary, whimsical,

9

or capricious as a matter of law. [Citation.]' (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614.)" (*People v. Branch* (2001) 91 Cal.App.4th 274, 282 (*Branch.*))

Appellant argues here that the other crimes evidence involving the P. sisters (M., Maria & Jessica) should not have been admitted because "[t]here was nothing to be added to the current charges via admission—the conduct that M. and her sisters accused appellant of was *fundamentally of the same sort as the charged conduct*, and, given appellant was already facing multiple accusers, nothing in the fact of multiplication itself to indicate more or less propensity to commit the charged crimes. . . . While section 1108 does not require similarity for admission, or anything beyond disposition, there is nothing here of probity to outweigh its considerable and inevitable prejudice." (Italics added.) Appellant appears to be arguing in essence that the uncharged conduct was *cumulative* to the charged conduct, adding nothing of independent value or substance. The argument is unavailing.

By acknowledging that the uncharged sex crimes evidence involving the P. sisters was "fundamentally of the same sort as the charged conduct" involving the M. sisters, appellant actually underscores the point that he objects to such evidence not because it has no appreciable probative value, but because it has entirely too much. (See *Falsetta*, *supra*, 21 Cal.4th at p. 915. See also *Branch*, *supra*, 91 Cal.App.4th at pp. 282-283.) The evidence demonstrated that he engaged in strikingly similar conduct with other young, vulnerable girls by ingratiating himself into their family and then exploiting their trust. The reliability of the evidence was strong because appellant pled guilty and spent time in prison for the prior conduct. Indeed, appellant acknowledges that "there was no doubt as to the commission of the prior offense: appellant had gone to prison for it." The evidence could hardly be more probative. Indeed, its admission was important "to assure that the trier of fact would be made aware of [appellant's] other sex offenses in evaluating the victim[s'] and [appellant's] credibility." (*Falsetta*, *supra*, 21 Cal.4th at p. 911.)

Having concluded that the uncharged sex crimes evidence was especially probative, we next consider whether the trial court abused its discretion in admitting

10

evidence of the prior sexual conduct in light of "four factors:  (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses."  (*Branch*, *supra*, 91 Cal.App.4th at p. 282, citing *Harris*, *supra*, 60 Cal.App.4th at pp. 737-741.)  For the reasons that follow, we find no abuse of discretion.

Here, the uncharged sex crimes testimony by the P. sisters was no more inflammatory than the evidence regarding the charged conduct.  To the contrary, A.'s testimony involved much more serious allegations, including penile penetration and appellant's masturbation, than those raised by the P. sisters' testimony.

As to the possibility of confusion of issues, courts have observed that "[i]f the prior offense did not result in a conviction, that fact increases the danger that the jury may wish to punish the defendant for the uncharged offenses and increases the likelihood of confusing the issues 'because the jury [has] to determine whether the uncharged offenses [in fact] occurred.'  ([*People v. Ewoldt* (1994) 7 Cal.4th 380, 405].)"  (*Branch*, *supra*, 91 Cal.App.4th at p. 284; see also *Harris*, *supra*, 60 Cal.App.4th at pp. 738-739.)  But here, the jury likely inferred that appellant had spent time in prison for his conduct with the P. sisters.[4]  The jurors' questions and requests to have testimony read back showed they had questions about Veronica's and A.'s knowledge of appellant's prior sexual offenses.  They also requested read back of A.'s testimony, including her description of the rape (regarding which the jury reached a deadlock and a mistrial was declared) and the pertinent dates and ages when she first testified during the preliminary

---

[4]      Although the trial court ruled that evidence that appellant had been convicted of a prior sex crime was inadmissible during the first phase of the trial, the jury heard the P. sisters testify that appellant molested them during the early 2000's, that they testified in court about the abuse (presumably at a preliminary hearing because appellant pled guilty), and that appellant was in prison from sometime in 2003 until 2005.  A. testified appellant molested her when she was six years old (around 2003), and that when he got out of prison and began molesting her again, she knew that "other girls" had made "prior accusations of similar conduct" against him in the past.

11

hearing, and of Veronica's testimony regarding witnessing appellant abusing her younger sister. The jurors' questions indicate they were acutely focused on deciding the veracity of the M. sisters' testimony and the current crimes, not on the uncharged crimes against the P. sisters. In addition, the jury was instructed on how to handle the evidence regarding the uncharged crimes with CALCRIM No. 1191.[5] There was no likelihood that the testimony of the P. sisters would confuse the jury, or that the jury would want to punish appellant for the prior crimes.

As to remoteness, the prior offenses occurred during approximately the same time period as the abuse alleged by the M. sisters. There was no time gap between the prior offenses and the charged offenses (except during the time appellant spent in prison), indicating the uncharged offenses tended to show appellant's predisposition to commit the charged offenses. (See *Harris*, *supra*, 60 Cal.App.4th at p. 739; *Branch*, *supra*, 91 Cal.App.4th at p. 285.) It is true that the M. sisters did not report the abuse until approximately eight years after it occurred, and such a "delay . . . could have been reasonably interpreted as a lack of credibility to those allegations." But we disagree with appellant's contention that the possible undermining of the M. sisters' credibility occasioned by the delay in reporting "was improperly and unfairly cured by way of admission of the multiple prior offenses" or that "the stronger case made the weaker, which was the case at hand." Rather, the uncharged sexual offenses assisted the jury in determining the credibility issues, just as intended by the Legislature when it enacted section 1108.

---

**5** The jury was instructed pursuant to CALCRIM No. 1191 that it was to consider the evidence of the uncharged crimes only if it found by a preponderance of the evidence that appellant committed the uncharged crimes. If the jury so found, "you may, but are not required to," conclude that appellant was inclined to commit sexual offenses, including those charged in this case. (CALCRIM No. 1191.) The jury was instructed that the conclusion that appellant committed the uncharged offenses "is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of lewd act upon a child. The People must still prove (each) (charge) beyond a reasonable doubt." (*Ibid.*)

Finally, there was no undue consumption of time in admitting the evidence of the uncharged prior offenses. The entirety of the three P. sisters' testimony covers only 19 pages in the reporter's transcript. Indeed, the trial court wisely and fairly excluded additional evidence proffered by the prosecution that yet another child had been molested by appellant during the same time period because it would have involved several witnesses and undue consumption of time.

In summary, the probative value of the other sex crimes evidence was very high, and the counterbalancing factors did not weigh at all heavily in favor of excluding the other crimes evidence. Indeed, this case could be described as the prototypical case contemplated by the Legislature in enacting section 1108, in which because of "the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests," "the admission of relevant evidence of a defendant's commission of other sex offenses" was justified. (*Fitch*, *supra*, 55 Cal.App.4th at p. 184, cited approvingly in *Falsetta*, *supra*, 21 Cal.4th at pp. 917- 918.)

## II.     Constitutionality of Section 1108

In *Falsetta*, *supra*, 21 Cal.4th 903, the California Supreme Court rejected the due process challenge to section 1108 that appellant raises here. (Accord, *People v. Loy* (2011) 52 Cal.4th 46, 60-61.) Although appellant contends that the holding in *Falsetta* must be reevaluated in light of the Ninth Circuit Court of Appeals' decision in *Garceau v. Woodford* (9th Cir. 2001) 275 F.3d 769, reversed on another ground in *Woodford v. Garceau* (2003) 538 U.S. 202, *Garceau v. Woodford* is neither binding on this court (*People v. Avena* (1996) 13 Cal.4th 394, 431) nor applicable here. *Garceau* concerned the introduction of evidence pursuant to section 1101 that the defendant had previously been convicted of murder and that he manufactured illegal drugs, not the admissibility of prior sex offenses in a sex offense case. (*Garceau v. Woodford*, *supra*, 275 F.3d at p. 773.) In *Garceau*, the California Supreme Court had held that the admission of prior crimes evidence to show propensity to commit murder violated state law but that the error was harmless. The Ninth Circuit disagreed with the finding that the error was harmless.

13

*Garceau v. Woodford* does not demonstrate that the ruling in *Falsetta* that section 1108 is constitutional should be revisited.

Appellant nonetheless contends that *Falsetta* should be reconsidered because the two safeguards discussed by the court in *Falsetta*, *supra*, 21 Cal.4th at pages 914 through 920—the weighing process of section 352 and the availability of limiting instructions for the jury—are not adequate to protect criminal defendants. However, the California Supreme Court is the proper tribunal to reconsider *Falsetta* if it is appropriate to do so. Unless and until that occurs, we are bound by the ruling in *Falsetta*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Finally, appellant's argument—that because propensity evidence is admitted only in sex offense cases, section 1108 violates the equal protection clause in that it discriminates on an irrational basis—was rejected in *Fitch*, *supra*, 55 Cal.App.4th at pages 184 through 185. In *Fitch*, the court held, "The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses. This reasoning provides a rational basis for the law. Defendant's arguments as to the recidivism rate of sex offenders are unavailing. In order to adopt a constitutionally sound statute, the Legislature need not extend it to all cases to which it might apply. The Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others." (*Ibid*.) The Supreme Court cited this discussion approvingly in *Falsetta*, *supra*, 21 Cal.4th at pages 917 through 918. We agree with the rationale of *Fitch* and reject appellant's equal protection argument.

## III.    Remand for Resentencing Is Required

Appellant contends, and the Attorney General correctly concedes, that the trial court erroneously believed that imposition of consecutive sentences for appellant's convictions for violating Penal Code section 288, subdivision (a) (lewd or lascivious act

14

on a child under 14), was mandatory pursuant to Penal Code section 667.6, subdivision (d), rather than discretionary.

Penal Code section 667.6, subdivision (d) mandates that "A full, separate, and consecutive term shall be imposed *for each violation of an offense specified in subdivision (e)* if the crimes involve separate victims or involve the same victim on separate occasions." (Italics added.) Subdivision (e)(5) includes a "[l]ewd or lascivious act [by force], in violation of subdivision *(b)* of Section 288," but it does not include a lewd or lascivious act in violation of Penal Code section 288, subdivision (a), not involving the use of force. (Italics added.) Similar language existed in the prior version of section 667.6, in effect prior to September 20, 2006, and therefore applicable to count 1 (conduct alleged to have occurred between April 3, 2002, and August 30, 2002) and arguably count 3 (conduct alleged to have occurred between April 12, 2005, and February 11, 2007).[6]

Defense counsel pointed out to the trial court the prosecutor's sentencing memorandum erred in stating that consecutive sentences were mandatory pursuant to Penal Code section 667.6, subdivision (d), for each violation of Penal Code section 288, subdivision *(a)*. The court nonetheless found that consecutive sentences were mandatory and imposed them.

The case of *People v. Rodriguez* (2005) 130 Cal.App.4th 1257 is instructive. There, the court held: "[Penal Code] [s]ection 288, subdivision (a) has long provided that nonforcible lewd act offenses shall be punished by terms of three, six, or eight years. (*People v. Hammer* (2003) 30 Cal.4th 756, 765.) In 1994, however, the Legislature enacted section 667.61—otherwise known as the one strike law. Section 667.61 provides for indeterminate terms of either 15 years to life or 25 years to life for section 288, subdivision (a) and certain other sex offenses *if* certain circumstances apply, regardless of

---

[6] The prior version of Penal Code section 667.6 provided: "(d) A full, separate, and consecutive term shall be served for each violation of . . . subdivision (b) of Section 288, . . . if the crimes involve separate victims or involve the same victim on separate occasions."

15

whether the defendant has prior convictions.  (Stats. 1993-1994, 1st Ex. Sess., ch. 14, § 1, p. 8570; *People v. Wutzke* (2002) 28 Cal.4th 923, 929-930.)"  (*Rodriguez*, *supra*, 130 Cal.App.4th at p. 1261.)  Neither section 667.61 nor section 667.6 mandates that multiple sentences under section 288, subdivision (a) are to be served consecutively.  (*Id.* at p. 1262.)  As recognized by the *Rodriguez* court, "Absent an express statutory provision to the contrary, [Penal Code] section 669 provides that a trial court shall impose either concurrent or consecutive terms for multiple convictions."  (*Ibid.*; see also *People v. Simmons* (2012) 210 Cal.App.4th 778.)  In exercising its discretion whether to impose concurrent or consecutive terms, a trial court should consider the factors set forth in California Rules of Court, rule 4.425.  (*Rodriguez*, *supra*, 130 Cal.App.4th at p. 1262-1263.)

In this case, the trial court mistakenly believed that it had no discretion to impose concurrent sentences.  We therefore vacate the sentence imposed and remand the case to allow the trial court to exercise its discretion in determining whether the sentence on count 3 should be served concurrently or consecutively to the sentence on count 1.

**DISPOSITION**

Appellant's convictions are affirmed, but the sentences imposed thereon are vacated. The matter is remanded to the trial court for resentencing with directions to exercise its discretion to determine whether consecutive or concurrent sentences are to be imposed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.*

We concur:

EPSTEIN, P. J.

MANELLA, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.