Filed 4/23/25  P. v. Swan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDON ARTIS SWAN,<br><br>    Defendant and Appellant. | F087651<br><br>(Super. Ct. No. LF014605A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Gina C. Teddington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Louis M. Vasquez, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Brandon Artis Swan was convicted by jury of inflicting corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a)), animal cruelty (§ 597, subd. (a)), and violating a court order (§ 166, subd. (a)(4)). He was sentenced to the upper term of four years in state prison.

On appeal, Swan argues that the trial court prejudicially erred by admitting evidence of an uncharged act of domestic violence he committed against C.G., who is also the victim of the currently charged offense of corporal injury on a cohabitant. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### The Prosecution's Case

#### The Underlying Offenses

Swan and C.G. were in a dating relationship and lived together. During their four-year relationship, C.G. secured three orders of protection against Swan, all of which were in effect at the time of the currently charged offenses.

On October 7, 2023, Swan choked C.G. during an argument. He also pushed her and grabbed her arm tightly. C.G. suffered bruising on her knee and arm from the incident.

On October 8, 2023, Swan and C.G. went out to eat dinner. When they returned home, C.G. stayed outside on the back patio. Sometime later, Swan came outside and told her, " 'Oh, by the way, Rosie is in there dying.' " Rosie was one of C.G.'s Chihuahua dogs. C.G. ran into her bedroom and saw blood everywhere. Rosie's throat had been cut. Swan laughed as Rosie lay dying in C.G.'s arms. C.G. did not report this incident to police, but she kicked Swan out of their shared home.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise warranted.

2.

On October 12, 2023, Swan asked the Taft Police Department to conduct a welfare check on C.G., asserting that C.G.'s son had threatened her with a gun. C.G. stated that her son had never physically harmed her. While a responding officer spoke to C.G., he observed injuries on her right arm, and bruising above her knee. Photographs were taken of C.G.'s injuries. Swan was arrested that same day.

### Swan's Prior Convictions for Domestic Violence

Between 2019 and 2022, Swan suffered three misdemeanor convictions for domestic battery (§ 243, subd. (e)(1)) against C.G. The court allowed the prosecutor to introduce evidence of the prior convictions occurring in 2019. However, the prosecutor was limited to presenting evidence of the fact of the conviction, but not their underlying facts.

With respect to Swan's 2022 conviction, C.G. testified that she called law enforcement after Swan had pushed and shoved her.

### The Defense's Case

Swan denied strangling C.G. during the charged incident occurring on October 7, 2023. He admitted that he had pushed C.G. after she had shoved him, which caused her to fall forward, bruising her knee and arm. After she fell, Swan grabbed her underneath her arms and picked her up.

Swan also denied harming Rosie, C.G.'s Chihuahua. He claimed that after finding Rosie lying on the floor, bleeding out, he called for C.G. to come into the house. Swan denied purposefully laughing but suggested that he may have done so because he was feeling anxious.

After C.G. kicked Swan out of their home, Swan admitted returning to the home on either October 9th or the 10th to collect his belongings.

On October 12, 2023, Swan requested a welfare check on C.G., explaining that he believed C.G. was being held at gunpoint because C.G.'s son had recently acquired a BB

gun. According to Swan, C.G. had previously told him that her son had threatened to shoot her.

Swan believed the protective orders against him were no longer in effect. He learned that this was not the case when he was arrested on October 12, 2023.

**DISCUSSION**

**I.      The Admission of Swan's Prior Uncharged Act of Domestic Violence**

Swan asserts that the trial court abused its discretion by allowing the prosecutor to present evidence of a prior uncharged act of domestic violence Swan perpetrated against C.G., which occurred on March 12, 2023. The Attorney General maintains that the admission of the uncharged act was proper, and in any event, harmless. We conclude that Swan has failed to demonstrate that the trial court erred in the admission of this evidence. Consequently, we do not address the Attorney General's argument regarding harmless error.

**A.      Background**

***The Prior Uncharged Act***

On March 12, 2023, Swan choked C.G. while she was lying on a bed. During the incident, Swan sat on her chest and placed his hand on her throat. C.G. lost consciousness twice and urinated herself. She begged Swan to stop, but he refused. C.G. eventually managed to get Swan to stop by pulling Swan's thumb toward his wrist. She reported the incident to law enforcement that same day.

***The Trial Court's Ruling on the Admission of Evidence of the Uncharged Act***

In her motion in limine, the prosecution sought to introduce testimony regarding the uncharged act. The prosecutor argued that the prior incident was highly relevant as it involved the same victim, took place just months before the charged offenses, demonstrated a pattern of behavior by Swan, and involved conduct similar to the currently charged offense. The prosecutor further asserted that the evidence was not

4.

unduly prejudicial. Since the uncharged incident pertained to the same victim, C.G., the defense would have the opportunity to cross-examine her, and the jury would receive instructions on how to consider the evidence.

Trial counsel countered that the prior uncharged act was more prejudicial than probative. He further observed that the charges stemming from the uncharged incident were dismissed at an Evidence Code section 402 hearing, before a jury was sworn in, due to C.G.'s refusal to testify. Additionally, counsel asserted that the prior incident was more inflammatory than the currently charged offense and could potentially mislead or confuse the jury.

The trial court determined that evidence of the uncharged act was probative to the charged act of domestic violence. At the close of evidence, the trial court instructed the jury with CALCRIM No. 303, which clarified that certain evidence was admitted for a limited purpose and should not be considered for any other purpose. The jury was also instructed with CALCRIM No. 852A, which stated that if the jury found the uncharged act of domestic violence had occurred, it could—but was not required to—infer that Swan had a predisposition to commit domestic violence, and based on that inference, conclude that he was likely to have committed the charged offenses. The instruction cautioned that the uncharged act alone was insufficient to establish guilt.

## B.  Applicable Law/Standard of Review

Evidence of prior criminal acts is generally inadmissible to show a defendant's propensity to commit such acts. (Evid. Code, § 1101, subd. (a).) However, Evidence Code section 1109 creates a limited exception to this rule, authorizing the admission of evidence related to a defendant's prior acts of domestic violence, "in a criminal action in which the defendant is accused of an offense involving domestic violence." (*Id*., subd. (a)(1).)

" Domestic violence' " is defined as "abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the

5.

suspect has had a child or is having or has had a dating or engagement relationship." (§ 13700, subd. (b).) " 'Abuse,' " within the meaning of subdivision (b) of section 13700, is defined as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (§ 13700, subd. (a).)

Before admitting evidence under Evidence Code section 1109, a trial court must balance the factors set forth in Evidence Code section 352 to determine whether the probative value of the evidence "is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Johnson* (2010) 185 Cal.App.4th 520, 531; *People v. Branch* (2001) 91 Cal.App.4th 274, 281-282.) The court's discretion in making this determination is broad and will not be disturbed absent a showing that it was exercised in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 480.)

### C. Analysis

Swan was charged, in part, with inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)), which is an act of domestic violence pursuant to Evidence Code section 1109. (See Evid. Code, § 1109, subd. (d)(3) [" 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code"]; § 13700, subd. (b) [" 'Domestic violence' means abuse committed against an adult…who is a…former cohabitant, or person with whom the suspect…has had a dating or engagement relationship]; § 13700, subd. (a) [" 'Abuse' means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another"].) Thus, evidence of the uncharged act here was admissible, so long as this evidence satisfied Evidence Code section 352, which it clearly did.

6.

Under Evidence Code section 352, the court balances the probative value of the evidence against four factors: "(1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*People v. Branch*, *supra*, 91 Cal.App.4th at p. 282.) Considering these factors as applied to the facts of the case at bench, we conclude that the trial court did not abuse its discretion in admitting evidence of the uncharged act.

" 'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) Here, evidence of the uncharged act was highly relevant to the charged offense, as both acts involved Swan choking C.G., the same victim of the currently charged offense.

With respect to the factors on the other side of the Evidence Code section 352 calculus, we find that the evidence of the uncharged act was neither more compelling nor more inflammatory than the charged offense. Both the charged act and the uncharged act involved Swan choking C.G. We do not agree with Swan's assertion that the uncharged act was more inflammatory based upon the fact that C.G. lost consciousness and involuntarily voided while she was being choked. Furthermore, we find the evidence underlying both incidents was equally persuasive, as C.G. provided testimony describing the events, and her injuries were corroborated with photographs taken by law enforcement.

Additionally, there was minimal risk of jury confusion about the specific charges against Swan, as the uncharged act occurred months before the currently charged offense, and trial counsel explicitly clarified that Swan was not on trial for his prior conduct.

We further conclude that evidence of the uncharged act was not cumulative of other trial evidence demonstrating Swan's propensity for violence. While two other prior acts of domestic violence were admitted at trial through certified dockets, details of the uncharged act were introduced through C.G.'s testimony. C.G.'s testimony had

7.

significantly greater probative value due to the similarities between the uncharged act and the charged offense.[2] Given these considerations, we conclude that the trial court did not abuse its discretion in admitting evidence of Swan's uncharged act of domestic violence.

## **DISPOSITION**

The judgment of conviction is affirmed.


SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


SNAUFFER, J.

---

[2] C.G. also provided limited testimony regarding Swan's 2022 misdemeanor domestic battery conviction, explaining only that Swan had pushed and shoved her during the incident. In contrast, the evidence of the uncharged act of domestic violence was significantly more probative to the current charge due to the similarities between the two incidents. Under the circumstances, C.G.'s testimony as to the uncharged act of domestic violence perpetrated by Swan was not cumulative.