Filed 3/3/15  P. v. Helton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHNNY RAY HELTON,<br><br>    Defendant and Appellant. | F068160<br><br>(Super. Ct. No. VCF283774)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  H.N. Papadakis, Judge.  (Retired judge of the Fresno County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Cornell, J. and Kane, J.

## PROCEDURAL SUMMARY

Appellant Johnny Ray Helton was charged in an information filed on June 19, 2013, with felony arson (Pen. Code, § 451, subd. (c), count 1) and one misdemeanor count of vandalism (Pen. Code, § 594, subd. (a), count 2). The information further alleged six prior serious felony convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(i)) and within the meaning of Penal Code section 667, subdivision (a)(1). The information also alleged two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

At the conclusion of a jury trial on August 15, 2013, appellant was found guilty of counts 1 and 2. In a bifurcated proceeding, the trial court found true the prior serious felony and prior prison term allegations. On September 27, 2013, the trial court exercised its discretion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and struck all of the allegations of prior serious felony convictions except for one.

The court sentenced appellant to prison for a total of 19 years: the upper term of six years for arson doubled to 12 years pursuant to the three strikes law; a consecutive term of five years for the prior serious felony conviction alleged pursuant to Penal Code section 667, subdivision (a)(1); and two consecutive terms of one year for each of the two prior serious prison term enhancements. The court awarded credits of 122 days that appellant was actually in custody, conduct credits of 61 days, and total custody credits of 244 days.

Appellant contends the trial court erred in permitting the prosecutor to present evidence of a prior, uncharged arson under Evidence Code section 1101 (undesignated statutory references are to the Evidence Code) because it was improperly used to show his propensity to commit the charged crime. Appellant also contends that the prejudice

of admitting this evidence outweighed its probative value under section 352. We reject these contentions and affirm the trial court's judgment.

**FACTS**

*Section 402 Hearing*

The information alleged that appellant committed arson on May 29, 2013.[1] The prosecutor brought a motion in limine seeking to admit evidence of appellant's involvement in starting a fire 12 days earlier on May 17. The prosecutor sought to show that on both occasions, appellant was trying to harm Kim Arrington, he had the same intent to commit the charged offense, and the fires were set intentionally and not as the result of mistakes. The prosecutor argued this evidence was admissible under section 1101 and that it should not be excluded under section 352.

At the section 402 hearing, Kimberly Arrington testified that a few weeks prior to the fire on May 17, appellant threw excrement and urine at her, her dog, her tent, and her belongings. Appellant then attacked Arrington with a rake and a footstool. During the attack, appellant threatened Arrington by saying, "'I'll bury you where you stay.'" Arrington complained to authorities, but the district attorney's office did not prosecute the case and appellant was released from jail.

On May 17, as Arrington was about to take a nap in her tent on the river between the Jaye Street and Main Street bridges in Porterville, she heard someone on the bike path say, "I'll bury you where you stay." The person was directly behind Arrington's tent. Arrington then smelled smoke, got up, looked outside her tent, and heard crackling. The fire was very close, so she grabbed her dog and ran for the fence. Arrington found a hole in the fence to escape the fire. When the fire department arrived, the fire had taken over the whole river bank between the two bridges.

---

[1]    Unless otherwise designated, all dates refer to the year 2013.

3

The voice Arrington heard was a male voice.  Although she did not recognize the voice, she recognized the words as the ones appellant had used during the earlier incident, which took place a week or two weeks earlier.  Arrington conveyed this information to the fire investigator and explained that she had been having trouble with appellant.  The May 17 fire happened shortly after the district attorney dropped the charges against appellant for the first attack on Arrington and he was released from jail.

The prosecutor argued that evidence of the May 17 fire was relevant on the issues of motive, identity, and the absence of mistake.  Defense counsel argued that the evidence was not even remotely reliable because Arrington had an animus toward appellant.  The court ruled that Arrington's testimony concerning the previous fire was admissible.  The court noted the two incidents were "very, very similar."

***Charged Arson***

On May 29, John Warner was homeless and lived near the Tule River in Porterville in a camp between the Jaye Street bridge and Highway 65.  Warner lived in a tent.  Kim Arrington, Sherry England, and Steve Parham lived in tents near Warner.  They constructed a barrier to keep away animals and other people.  There were a total of four tents in the camp, in an area about 16 feet by 30 feet.

Around 6:00 or 6:30 a.m., Warner went to the restroom area, about 10 feet outside the wall of the campground.  As he was urinating, Warner looked up to the top of the hill about 20 to 25 feet away and saw a man squatting.  The man was facing Warner.  Warner saw smoke and fire beside the man.  Warner could hear the crackling of bamboo.  Warner went to get a shovel to put out the fire.  Warner was away for 30 to 45 seconds.  Although Warner wears glasses, they are for reading and he sees fine without them.

The fire was spreading quickly and was about 15 feet in diameter.  Warner grabbed the shovel and started heading up the hill to try to extinguish the fire when he heard Arrington scream, "He's trying to kill me."  Warner went back to see if he could

4

help Arrington. He realized that the fire was too large for him to extinguish with the shovel he had retrieved. Warner went back to the camp and saw the same man who had started the fire trying to cut his way into Arrington's tent. Arrington was still screaming. Warner started chasing the assailant up the hill and down a dirt road for about a half mile. The man dropped a baseball cap.

The assailant went into Dr. Rice's house. It took investigators three to five minutes to arrive. During the chase, the assailant asked Warner four or five times not to tell on him. Warner identified appellant in court as the assailant.

Arrington testified that she was awoken on May 29, when Sherry England began yelling that there was a fire. Arrington saw a silhouette outside her tent. The tent was entirely closed and Arrington could not exit without unzipping the entry. Arrington asked who was behind her tent. A man responded, "Hello puppy, puppy." Then Arrington saw appellant through the back of the mesh screen. Appellant began slicing the screen open. Arrington screamed for Warner to help her. After cutting a hole into Arrington's tent, appellant reached for her head. Arrington tried to get out of the tent, but she panicked and could not unzip the exit. Warner arrived and chased appellant away.

On May 29, Michael Mahoney was staying at the El Granito Foundation on West Date, which was run by Dr. Janice Rice, a pastor. While Mahoney was in a Bible study, appellant started pounding on the front door. When Mahoney and Dr. Rice went to the door, appellant told them to call 911 because a woman had been kidnapped, everyone was looking for her, she was tied to a mattress down at the river, and she was being used as a sex slave. Mahoney gave Dr. Rice his phone and she called 911. Appellant appeared ecstatic and excited.

Mahoney saw Warner across Date Street. Appellant told Warner, "'You're gonna get 5 years you mother.'" Warner replied, "'You're gonna get life.'" While Dr. Rice was on the phone with the 911 operator, Mahoney noticed smoke coming from the river and

5

told Dr. Rice that the fire department would be needed.  Mahoney saw appellant place some items into a hole at the top of a cinder block wall outside the house and cover the hole with rocks from his pocket.  Mahoney later retrieved the items, a Leatherman multipurpose tool and a lighter.

Michael Brodbeck worked as a fire fighter and on-shift fire investigator for the Porterville Fire Department.  On May 29, he was called to fight and investigate a fire at the river.  After being dispatched, it took Brodbeck about two or three minutes to arrive at the scene of the fire.  The fire was approximately 50 feet by 100 feet.  Firefighters used foam and water to extinguish the fire.  The fire was contained in five minutes and completely out after 20 minutes.

Brodbeck determined where the fire was started.  The weather was clear, so lightening was not a cause of the fire.  The cause of the fire was from a match, a lighter, or any item someone could use to start the fire and walk away.

Brodbeck talked to Arrington and Warner, who were upset and "a little mad."  Mahoney gave Brodbeck the Leatherman and the lighter that appellant attempted to hide.  Appellant was given his *Miranda*[2] rights and he told Brodbeck that he was looking for a woman named Rhonda Richie, he was in love with her, and Richie was taken into the camp and being sold for sex.  Appellant learned this from a female transient the night before, but was too tired to look for Richie then.  Appellant told Brodbeck there was no fire when he was in the camp and did not see Richie there.

### *Uncharged Arson*

After Warner and Arrington testified about the fire on May 29, Arrington testified that on May 17, her tent was on the river between the Jaye Street and Main Street bridges.  Arrington was about to take a nap when a fire broke out on the river and she had

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

to run.  Arrington heard a voice behind her tent on the bike path.  Arrington estimated the voice was about 28 feet away from her tent and was a male voice.  Defense counsel objected to Arrington's testimony as irrelevant.  The court advised the jury that Arrington's current testimony was admissible only for the limited purpose of showing motive, intent, and identity.

The man said, "'I'll bury you where you stay.'"  Arrington had seen appellant and heard him use that same phrase prior to the fire on May 17.  The fire spread between Jaye and Main Streets and spread across both sides of the river.  All of Arrington's property was destroyed.

Porterville Fire Captain Mitchell Sandoval responded to the fire to assist initially with fire suppression and then to investigate the cause of the fire.  Sandoval found no obvious cause of the fire.  Sandoval and the fire investigator concluded the fire was either caused by an open flame device, such as a lighter, a match, or discarded smoking material.  Discarded smoking material could be from a cigarette, a hot ember from a barbeque or cooking fire, or coal.  Sandoval did not find any discarded cigarette butts.

### Defense Testimony

Dr. Rice testified that she conducted drug diversion classes at the El Granito Foundation.  Dr. Rice was teaching a class that started at 6:30 a.m. when appellant beat on the door and said, "we need help."  Dr. Rice described appellant as "freaking out."  Appellant told Dr. Rice that Rhonda was being raped and needed help.  Dr. Rice knew Rhonda.  Another man was screaming and yelling "crazy stuff" at appellant like he was going to get him.

Appellant testified that he was nowhere near Arrington on May 17, and did not know about the incident until the trial.  Appellant lived about two miles down the river from Warner's camp.  Appellant's camp was nicer and was near running water.  On May 29, appellant left his camp at about 4:00 a.m., looking for Rhonda Richie, who had been

7

missing for a couple of days, and eventually came to Warner's campsite. Appellant had a relationship with Richie 15 to 19 years earlier and still had feelings for her. Appellant had heard she was being mistreated and held against her will at Warner's camp.

When appellant found Warner's camp, he saw Warner guarding what turned out to be Arrington's tent. The first thing appellant saw was disturbing to him. There was a baby carriage wrapped with a knotted yellow rope and there was a bank bag with yellow rope in it as well. This indicated to appellant that they had someone in bondage whom they were selling. That was what appellant had learned was going on down there.

Appellant slowly began to take apart the barrier around Warner's camp. After 15 or 20 minutes, appellant got through the barrier. He went to the back of the tent that he thought Rhonda was in because he could not see through it or inside of it. That was when appellant took out "the Leatherman thing" and used the knife blade to slice open the tent a few inches to look inside of it. Arrington screamed. Another lady and man came out of their tents and came toward appellant, who ran away, eventually making it to Dr. Rice's place. Appellant never saw Richie inside the tent or at any time on May 29. Appellant admitted putting the Leatherman tool and the lighter on the wall. He also had rocks in his pocket for when dogs chased him on his bicycle. The rocks were cumbersome so he removed them from his pocket and also set them on the wall. Appellant denied setting the fire.

## ADMISSION OF OTHER-CRIMES EVIDENCE

Appellant contends the trial court abused its discretion under section 1101 in permitting testimony concerning the uncharged arson. Appellant argues the two offenses were not similar enough to one another and it was error to permit the evidence to show identity or common plan. Appellant argues that the court erred in giving CALCRIM No. 375, the other-crimes evidence instruction, and that he was denied his constitutional right to due process by the admission of the uncharged arson.

8

Under section 1101, evidence of a defendant's other misconduct is inadmissible to prove the defendant's propensity to commit the charged offense. (§ 1101, subd. (a); *People v. Branch* (2001) 91 Cal.App.4th 274, 280 (*Branch*).) Because evidence of other crimes may be highly inflammatory, its admissibility should be scrutinized with great care. (*People v. Gray* (2005) 37 Cal.4th 168, 202 (*Gray*).) Such evidence is admissible, however, to establish a fact such as motive, intent, identity, preparation, absence of mistake or accident, or that the defendant acted toward a common design or plan. (§ 1101, subd. (b); *Branch*, *supra*, 91 Cal.App.4th at p. 280; see *People v. Balcom* (1994) 7 Cal.4th 414, 422-424.)

The admissibility of other-crimes evidence depends on the materiality of the fact sought to be proved or disproved, the tendency of the uncharged crime to prove or disprove the material fact, and the existence of any rule or policy requiring exclusion of relevant evidence, such as section 352. (*People v. Lindberg* (2008) 45 Cal.4th 1, 22 (*Lindberg*); *People v. Sully* (1991) 53 Cal.3d 1195, 1224.) On appeal, we review the trial court's ruling under section 1101 for abuse of discretion. (*Gray*, *supra*, 37 Cal.4th at p. 202.)

When the prosecution seeks to prove identity of the perpetrator of the charged offense, the admissibility of evidence of the uncharged offense or offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity. A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to prove intent. (*Lindberg*, *supra*, 45 Cal.4th at p. 23; *People v. Roldan* (2005) 35 Cal.4th 646, 705 [disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22].)

We agree with the People that both the uncharged and charged arson here were distinctly similar. Both arsons involved fires deliberately set by open flame devices to foliage next to homeless encampments, both fires were set in or near the same location,

9

both fires appeared to be attacks on Arrington, and both fires occurred while Arrington was resting in her tent. During the May 17 fire, Arrington heard a man say he would bury her where she stayed, an expression she heard appellant use on a prior occasion, just as the fire erupted. During the May 29 fire, appellant again threatened Arrington verbally and by cutting a hole in her tent shortly after he was seen squatting in brush with flames burning next to him.

Appellant argues that the trial court never conducted an analysis as to whether the similarities rose to the level of sufficient distinctiveness. We agree with the People that the trial court in fact expressly stated that the two incidents were similar enough to one another to show appellant's identity and therefore sufficient as well to prove appellant's intent, where the least amount of similarity between charged and uncharged offenses is required.

We note that the jury was instructed with CALCRIM No. 375, the instruction limiting evidence of uncharged acts to show appellant's intent, motive, or common plan or scheme. The court told the jury to evaluate the similarity or lack of similarity between the charged and uncharged offenses. In its oral instructions, the trial court left out the advisement to the jury in the written instructions, "Do not consider this evidence for any other purpose." We do not find the omission of this one sentence to be a reversible error, structural or otherwise, because the jury was given a written copy of the instructions to use during their deliberations and our Supreme Court has held that to the extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions control. (*People v. Mills* (2010) 48 Cal.4th 158, 200-201.) Also, the trial court had already advised the jury during Arrington's testimony concerning the arson on May 17 that the other-crimes evidence was admitted for a limited purpose.

We agree with the People that even if the admission of the arson on May 17 violated section 1101, the error was harmless under the facts of this case. Appellant was

10

caught in the act of starting a brush fire next to a homeless encampment on May 29. Appellant was seen threatening Arrington after tearing a hole in her tent. Appellant was chased to Dr. Rice's foundation and seen by an independent witness pulling the Leatherman tool and lighter out of his pocket and then trying to hide them in a wall with rocks he also pulled out of his pocket. There was strong and substantial evidence of appellant's culpability for the May 29 arson.

Ordinarily, the erroneous admission of evidence is evaluated under the standard of review set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Clark* (1992) 3 Cal.4th 41, 130 (overruled on another ground in *People v. Pearson* (2013) 56 Cal.4th 393, 461-462).) Had evidence of the uncharged arson on May 17 been excluded, we do not find it reasonably probable that the jury would have reached a different result on the charged arson.[3] Given the strength of the People's case, pursuant to *Chapman v. California* (1967) 386 U.S. 18, we further find beyond a reasonable doubt that exclusion of the challenged other-crimes evidence would not have altered the jury's verdict on the charged arson.

## SECTION 352

Appellant contends the trial court abused its discretion under section 352 in permitting evidence of the uncharged arson. The People initially argue that appellant cannot challenge the prejudicial effect of the evidence pursuant to section 352 because he did not raise an objection on this ground to the trial court.[4] We reject the People's

---

[3] We further reject appellant's due process challenge to the admission of other-crimes evidence.

[4] Appellant argues that trial counsel did argue to the trial court that the evidence was neither reliable nor relevant. Although this may not have been the most artful way to raise a section 352 objection, we find it was sufficient enough to put the court and prosecutor on notice that appellant was challenging the prejudicial effect of the evidence. We note that the prosecutor's motion seeking admission of this evidence argued it was not unduly prejudicial under section 352. We further find the trial court made at least an

11

forfeiture argument. We also reject appellant's section 352 challenge to the admissibility of the uncharged arson.

Under section 352, the trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. We review a challenge to the trial court's ruling for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law. (*Branch*, *supra*, 91 Cal.App.4th at pp. 281-282.) Evidence that is unduly prejudicial within the meaning of section 352 is evidence that uniquely tends to evoke an emotional bias against the defendant as an individual while having only slight probative value. (*People v. Scheid* (1997) 16 Cal.4th 1, 19.)

We concur with the People that the evidence of the arson on May 17 was highly probative to show identity, intent, common plan, and motive. Both arsons appeared to show that appellant had a motive to attack Arrington. They both happened very close in time, less than two weeks apart. The testimony concerning the May 17 event took little time in the trial and the jury was admonished to consider it for the limited purpose of showing identity, intent, common plan, and motive. The trial court did not abuse its discretion under section 352 by admitting evidence of the uncharged arson on May 17.

## DISPOSITION

The judgment is affirmed.

---

implied ruling that admission of the evidence under section 352 was not unduly prejudicial.