Filed 8/25/25  P. v. Garay CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FABIAN GARAY,<br><br>    Defendant and Appellant. | D085997<br><br><br>(Super. Ct. No. FWV23001176) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Daniel W. Detienne, Judge.  Affirmed.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

Fabian Garay was convicted of attempted premeditated murder (Pen. Code, §§ 664/187, subd. (a); count 1) and assault with a deadly weapon (§ 245(a)(1); count 2).  On appeal, he claims his convictions should be

reversed because the trial court abused its discretion when it admitted evidence of a similar uncharged offense he committed in 2019. We conclude (1) evidence of Garay's prior offense was relevant and admissible under Evidence Code section 1101(b) and (2) its probative value substantially outweighed any undue prejudice under Evidence Code section 352. We therefore affirm.

## I.

### A.

In October 2022, Garay and Ismael R. had been neighbors for one year and known each other for three or four months. Garay had worked for Ismael twice, cleaning a "big mess" in Ismael's backyard. During the time they knew each other, Ismael had seen Garay in his wheelchair only "a few times." According to Ismael, Garay was "on his feet most of the time."

One afternoon in October, Garay knocked on Ismael's front door to let him know some of his clothes had flown into Ismael's backyard. Once Ismael retrieved the clothes, Garay left.

That evening, after returning from shopping, Ismael was opening his front door when he heard someone say "'hey'" behind him. When he turned, Ismael saw Garay wearing a black face mask covering his mouth and nose and a sweatshirt covering his head.

Garay pushed Ismael inside and locked the front door into the home. They were alone. Garay said, "'I told you not to talk to my wife,'" and he told Ismael to "'kneel down and ask for forgiveness.'" When Ismael refused, Garay started "stabbing [Ismael] everywhere." Garay then took Ismael's car keys and left.

When responding officers asked Ismael who stabbed him, Ismael responded, "My neighbor." Later, Ismael identified Garay as his attacker.

2

Two weeks later, Ismael and his niece returned to his apartment, where she noticed a black mask. She asked Ismael if it was the one his attacker wore. He responded, "it probably was, because I don't have any of those masks." Ismael said the mask was "[r]ight in the middle of the entry where I took it off" Garay.

When Garay later was arrested and questioned about the incident, he claimed to be in the hospital when the assault occurred. Garay told an officer "[h]alf [his] side" was paralyzed due to a "stroke and a seizure" he suffered in 2018. He claimed to have been wheelchair bound since 2018 and unable to walk at all. When the officer told Garay that Ismael identified him as his attacker, Garay said "it wasn't me" and maintained he was in the hospital.

B.

Both the defense and prosecution filed motions in limine regarding evidence of Garay's 2019 assault on another person. The prosecution sought to admit the evidence to prove opportunity—because both the 2019 assault and charged offense involved Garay walking up to a victim, assaulting him with a knife, and leaving on foot—while Garay sought its exclusion. The court revisited the motion several times before ruling.

During the first discussion, the court intended to allow the evidence, noting it seemed admissible for several reasons under section 1101(b), which allows the admission of evidence "that a person committed a crime . . . when relevant to prove some fact (such as . . . opportunity . . . ) other than [the person's] disposition to commit such an act." (Evid. Code, § 1101(b).) The court stated the incidents were similar, as "the motive appears to be the same. The weapon used appears to be the same. The means of it appear to be the same." The prior incident, having happened three years earlier, was also "relatively close in time." The court found the prior incident would be

3

probative, particularly regarding the question of "whether or not [Garay] was physically able to carry out the offense," considering Garay was also reliant on a wheelchair in 2019. Accordingly, the court stated the "probative value does outweigh any risk of unfair prejudice under the circumstances."

Given the similarity between the offenses, defense counsel argued the evidence would prejudicially risk the jury viewing it as "propensity or character evidence." In response, the prosecution agreed the court could instruct the jury with CALCRIM No. 375, to specify the jury could not consider the evidence for propensity. Accordingly, the court granted the prosecution's motion "as to intent, . . . as to identity, as to motive, and as to absence of mistake or accident."

Prior to opening statements, the court again ruled on the motion, allowing the evidence as to the issue of "whether or not [Garay] could physically commit the crime he is charged with." Given Garay's "reduced mobility since 2018" and purported inability to commit the charged crime, the court stated the "1101(b) evidence of 2019 would tend to prove he does have the mobility to commit the charged offense."

The court also considered section 352. The court noted the uncharged act was not as serious as the charged act, making it less prejudicial. The court found sufficient similarity between the acts to give the prior act probative value. To avoid undue consumption of time and undue prejudice, the court indicated it would instruct the jury with CALCRIM No. 375, only allow the evidence to be used in rebuttal, and limit it to proving opportunity.

C.

At trial, the defense relied on Garay being wheelchair bound and his "inability to walk and to be completely mobile since at least 2018."

4

Garay testified to being physically incapable of committing the attack on Ismael due to a progressive "debilitating disease" that causes weakness in his left leg. He stated he was not completely wheelchair bound in 2018 and would use a walker or anything he could "prop [himself] against." To the extent he could walk unassisted, he could only walk "[l]ess than 20 feet" and could not walk 55 feet "without falling." When asked if he could physically walk at the time of trial, he said no. Garay acknowledged informing an officer that since 2018, he had been wheelchair bound and could not walk at all. He also acknowledged telling his neurologist, Dr. Beldev Rai, that he could not walk unassisted in 2019.

Garay's neurologist, Dr. Rai, testified to his knowledge regarding Garay's physical condition. Dr. Rai began treating Garay for seizures "related to his previous history of fungal meningitis." The condition causes weakness in the limbs and affects motor skills, but Garay was taking medication to treat it. Dr. Rai did not know whether Garay actually had weakness in his limbs. When Dr. Rai first started treating Garay in 2018, and during the five years that he treated him, Garay was always in his wheelchair. Based on that observation alone, Dr. Rai recorded in 2019 that Garay "is currently in a wheelchair and is unable to walk unassisted." Dr. Rai did not question Garay's ability to walk and did not perform any tests to assess his walking ability. When shown Exhibit 42, a video of Garay's 2019 arrest, Dr. Rai agreed if the person in Exhibit 42 was Garay, then Garay "has lied to [him] about his ability to walk."

## D.

During rebuttal, the prosecution presented four witnesses to testify to Garay's 2019 assault with a deadly weapon.

5

The victim of the uncharged offense testified Garay approached his truck, accused him of talking about his wife, and attacked him with a red knife or dagger, cutting him. After the assault, Garay "took off quickly." When asked to describe how Garay walked, he responded Garay "was walking normally" and did not limp, hobble, or struggle to walk.

A neighbor also witnessed part of the altercation. She saw Garay near the truck where the assault occurred, but he did not make contact with a nearby shopping cart during the altercation. After the assault, the neighbor watched Garay "push[ ] a shopping cart down the street" and saw him "go[ ] around the corner pretty fast." She did not observe Garay "sitting down or anything."

Another witness testified to seeing Garay with a shopping cart. The witness pursued him after the altercation and observed Garay "pushing his [shopping] cart on foot." He never saw Garay stop to take a break or sit down. The witness described Garay as "going at a good clip" and "walking rapidly."

The investigating officer testified to finding Garay "a little bit over a quarter of a mile" from where the assault occurred. The officer determined the distance was ".38 of a mile."

The jury was shown Exhibit 42, which was the body-worn-camera footage from Garay's arrest. The video shows Garay walking out of a house with both arms raised. The investigating officer testified Garay had no difficulty walking.

No wheelchair was found at the house during the arrest. The investigating officer testified Garay walked 25 feet two different times inside the police station and another 20 feet from the vehicle to the station. The officer testified Garay had no trouble walking and did not need assistance.

6

E.

The jury convicted Garay of both charged offenses.  The jury also found true an allegation Garay committed the attempted murder willfully, deliberately, and with premeditation.  The jury further found Garay personally used a deadly and dangerous weapon (§ 12022(b)(1)).  Garay was sentenced to an indeterminate term of 25 years to life in prison.  The court stayed punishment for count 2 under section 654.

II.

Garay claims his convictions should be reversed as the trial court abused its discretion in admitting evidence of his 2019 assault.  Specifically, he asserts the evidence was not relevant to prove any permissible fact under Evidence Code section 1101(b) and was unduly prejudicial under section 352.  We disagree.

"We review a trial court's decision to admit evidence under Evidence Code sections 1101 and 352 for abuse of discretion."  (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)  It is a defendant's burden to show "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 [cleaned up].)

A.

To start, the People assert Garay forfeited his claim by failing to renew his objection to the evidence during trial.  We disagree.

"Generally when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal."  (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3.)  Such an objection is unneeded, however, if the motion in limine "satisfies the basic requirements of Evidence

7

Code section 353[:] (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context." (*People v. Morris* (1991) 53 Cal.3d 152, 190.)

Here, the People assert Garay's motion in limine to exclude the evidence did not preserve the issue as it did not address "how many witnesses the prosecutor could call, how extensive the testimony could be, or whether the witnesses could describe injuries." Yet Garay's motion sought to exclude *all* evidence of the 2019 assault under both sections 1101(b) and 352. The trial court considered the motion over multiple hearings and ruled before trial on the permissible purpose and use of this evidence. Thus, the *Morris* criteria were satisfied, and the issue was properly preserved.

B.

In general, "evidence of a person's character," including "evidence of specific instances of [the person's] conduct," "is inadmissible when offered to prove [the person's] conduct on a specified occasion." (Evid. Code, § 1101(a).) However, section 1101 allows the admission of evidence "that a person committed a crime . . . when relevant to prove some fact (such as . . . opportunity . . . ) other than [the person's] disposition to commit such an act." (§ 1101(b).) "[T]he uncharged act must be relevant to prove a fact at issue (Evid. Code, § 210), and its admission must not be unduly prejudicial, confusing, or time consuming (Evid. Code, § 352)." (*People v. Leon* (2015) 61 Cal.4th 569, 597-598.)

"[R]elevance depends, in part, on whether the act is sufficiently similar to the current charges to support a rational inference of . . . other material fact." (*Leon*, 61 Cal.4th at p. 598.) Evidence of opportunity, or "ability" to

8

commit an act, is one such fact. (*People v. Thomas* (1992) 2 Cal.4th 489, 520.) Thus, to show opportunity, the evidence must have "some tendency in reason to show" the defendant was able to commit the offense. (*Id.* at p. 519.)

Garay's defense at trial centered on his inability to walk. His physical condition was discussed at length in his doctor's testimony, in his own testimony, and in defense counsel's opening statement and closing argument. Accordingly, evidence of Garay's ability to walk in 2019 had some tendency in reason to show his ability to commit the offense. The evidence at least tends to disprove his claim he was fully reliant on a wheelchair in 2022.

Yet Garay claims evidence admitted from the 2019 assault served no legitimate noncharacter purpose, inviting the jury to draw impermissible propensity inferences. He argues any "tendency in reason" to prove he had the means to commit the crime charged was broken by (1) the significant passage of time between the offenses and (2) the "undisputed" evidence of his progressive medical condition causing physical deterioration between 2019 and 2022.

As to the three-year time gap between the offenses, "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*People v. Branch* (2001) 91 Cal.App.4th 274, 284.) In fact, the Supreme Court has held evidence of an act occurring 12 years before the charged offense did not "significantly lessen" its probative value. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) Thus, any temporal disconnect did not undermine the probative value of the evidence.

Garay's argument that the evidence from 2019 was irrelevant to his physical condition in 2022 is unconvincing. The evidence of Garay's physical deterioration came from his own statements, both in court and to his doctor. Garay underwent no tests during Dr. Rai's treatment to support his claim

9

that he was unable to walk unassisted.  Therefore, the evidence Garay carried out the 2019 assault with no physical difficulties, directly contradicting his claims about his walking abilities at that time, had a tendency to cast doubt on the veracity of Garay's statements about the extent of his physical deterioration and ability to walk in 2022.

Garay also asserts the 2019 uncharged assault lacked sufficient similarity to prove "opportunity" as related to "identity" or any closely related purpose under section 1101(b).  He claims the prior attack "occurred in a public area, involved a victim sitting in a truck, and used a distinct 'red' knife or dagger," whereas the charged offense "took place inside the victim's apartment and lacked any unique or signature-style features."  These differences have no bearing on Garay's physical ability to commit the 2019 assault.  Instead, like the charged offense, the 2019 assault required Garay to walk up to the victim, physically assault him with a knife, and flee the scene.  These facts have tendency in reason to prove Garay had the opportunity to commit the same actions just three years later in the charged incident.

As to whether the 2019 offense invited the jury to draw impermissible propensity inferences, the court used CALCRIM No. 375, which allowed the jury to consider the uncharged offense for "the limited purpose" of determining whether Garay "had an opportunity to commit the offense alleged in this case."  Importantly, the instruction continued: "Do not consider this evidence for any other purpose except for the limited purpose of determining [Garay's] credibility."  Specifically, the instruction warned the jury "not [to] conclude from this evidence that [Garay] has a bad character, or is disposed to commit crime."  "The presumption is that limiting instructions are followed by the jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) Garay fails to rebut this presumption.

10

Given the evidence's tendency in reason to prove opportunity and the limiting instruction, we conclude evidence of the 2019 assault was admissible under section 1101(b).

## C.

Garay argues the trial court abused its discretion by not excluding the evidence as unduly prejudicial under section 352. We disagree, as the trial court gave a limiting instruction, the uncharged act was not more serious than the charged act, and the court only allowed the evidence to be used in rebuttal after adequate consideration of any undue prejudicial impact.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) The prejudice "referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) To determine prejudice, trial courts "must consider such factors as [the uncharged offense's] nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

Garay contends any probative value of evidence from the 2019 assault was minimal given the temporal remoteness and his physical deterioration between 2019 and 2022. Above we explained why these arguments are unpersuasive. This evidence was highly probative of the disputed issue of Garay's physical ability to commit the crime.

11

Meanwhile, as explained above, any undue prejudicial effect was minimized by the limiting instruction the jury received here.

Garay also asserts the prejudice here was great given the jury heard extensive, "graphic" evidence regarding the 2019 assault, including the victim's testimony of being stabbed three times and a witness's testimony about hearing the victim scream and seeing him bleeding. But Garay's reliance on *People v. Gibson* (1976) 56 Cal.App.3d 119 for this point is inapt. *Gibson* found a trial court prejudicially erred when it admitted two photographs of a murder victim's wounds that were "gruesome, revolting, and shocking to ordinary sensibilities," given the numerous other photographs admitted and the testimony of the coroner. (*Id.* at p. 135.) The verbal descriptions of nonfatal wounds admitted here fail to rise to that level.

The court also determined the uncharged act was not as serious as the charged act, making it less prejudicial. In assessing prejudice, if a defendant's uncharged acts are "no stronger and no more inflammatory than the testimony concerning the charged offenses," the "potential for prejudice" decreases. (*Ewoldt*, 7 Cal.4th at p. 405.)

In short, evidence regarding Garay's ability to walk in 2019 had significant probative value, as it directly impeached his testimony regarding the true nature of his physical state in 2019 and thus cast doubt on his testimony as to his physical abilities in 2022. In contrast, any undue prejudicial effect was minimized by the limiting instruction, the evidence's limitation to rebuttal, and the uncharged act's lesser seriousness. On the record before us, the court did not abuse its discretion in determining the evidence was admissible under section 352. Because we find no abuse of discretion, we need not address the parties' remaining arguments.

12

### III.

We affirm.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.